456 P.2d 376

Homer A. MASSENGILL and Ruby Massengill, Administrators of the Estate of George B. Platt II, deceased; Homer A. Massengill and Ruby Massengill, Administrators of the Estate of Billie M. Platt, deceased, Appellants,

v.

YUMA COUNTY, Travis Yancey, Sheriff of Yuma County, and Earl W. Keenum, Appellees.

No. 9627–PR.

Supreme Court of Arizona.

In Banc.

July 1, 1969.

Rehearing Denied July 15, 1969.

Moore, Romley, Kaplan, Robbins & Green, by Philip A. Robbins and Craig R. Kepner, Phoenix, for appellants.

Browder, Gillenwater & Daughton, by Robert W. Browder, Phoenix, for appellees.

McFARLAND, Justice:

County of Yuma, State of Arizona; Travis Yancey, Sheriff of Yuma County; and Earl W. Keenum, petitioners in this case—hereinafter referred to as defendants —petitioned for and have been granted a review from a decision of the Court of Appeals, Division One, which reversed an order and judgment of the Yuma County Superior Court granting the defendants' motion to dismiss the complaint on the grounds that it failed to state a claim upon which relief could be granted. 9 Ariz.App. 281, 451 P.2d 639. The decision of the Court of Appeals is vacated.

This being a motion to dismiss we take the facts pleaded in the complaint as true, and set them forth here basically as stated in the brief on appeal. On August 9, 1964, a head-on automobile collision occurred near Parker in Yuma County, Arizona, which resulted in the tragic deaths of five persons and a sixth totally disabled for life. The appellants brought the present wrongful death and personal injury actions against a number of defendants including Yuma County, Sheriff Travis Yancey and Deputy Sheriff Earl W. Keenum. Travis Yancey was the duly-elected, qualified and acting sheriff of Yuma County, Arizona, and Earl W. Keenum was his duly-appointed, qualified and acting deputy sheriff, acting within the course and scope of his employment.

During the late evening of August 8, 1964, and early morning of August 9, 1964, Earl W. Keenum was on duty in the parking lot used by patrons of the establishments known as Paradise Harbor and Sports Valley [who are also defendants in the court below but are not involved in this appeal]. Homer A. and Ruby Massengill, Administrators of the Estates of George B. Platt, II, deceased, and Billie M. Platt, deceased—hereinafter referred to as plaintiffs—contend that Keenum knew or

should have known that the foregoing establishments served alcoholic beverages, were frequented by minors, served alcoholic beverages to minors, and were located along a stretch of dangerous highway which was mountainous, winding and narrow, containing sharp curves and steep hills and was heavily traveled. Keenum was occupying his marked patrol car owned by Yuma County, which was equipped with an overhead flashing red light operated by a switch inside the car, which light when turned on, he knew or should have known from prior experience, would probably cause any driver being pursued to stop. Keenum's duty at that time included and required the apprehension and arrest of both parties to each sale of intoxicating beverages to minors and also included and required the apprehension and arrest of persons violating traffic laws and driving in an unsafe manner.

John Whaley and David Wood, each using his own car, drove out of the parking lot in a reckless manner at a high rate of speed. They proceeded down the highway side by side, and while driving in this manner passed the patrol car of Keenum which was parked near the highway. Keenum drove onto the highway, and followed behind them until the time of the accident, but made no effort whatsoever to apprehend them.

As alleged by plaintiffs in their complaint, the vehicles were being operated in violation of the laws of the State of Arizona in one or more or all of the following respects:

"(a) John Whaley was driving in a reckless manner, exceeding the speed limit, driving on the wrong side of the road, attempting to pass on a hill and on a curve, and driving while intoxicated.
"(b) David Wood was driving in a reckless manner, exceeding the speed limit, driving while intoxicated, and refusing to reduce his speed or allow John Whaley to pass him while traveling with both of the aforesaid cars abreast on a curve and hill.

"All of the foregoing violations were committed in the presence of and were obvious and apparent to Keenum, who by virtue of his obligations as deputy sheriff thereupon had the duty to immediately arrest John Whaley and David Wood. Keenum knew or should have known that the driving of John Whaley and David Wood at that time created an extremely dangerous hazard to other motorists on River Road.

"If Keenum had acted with reasonable diligence, he could have arrested John Whaley and David Wood before they reached the point where the aforesaid accident occurred. In spite of his duty to apprehend and arrest John Whaley and David Wood and in spite of having sufficient opportunity to do so, Keenum failed to turn on his overhead light to signal John Whaley and David Wood to stop and failed to make any or adequate attempt to apprehend and arrest John Whaley and David Wood.

"As a direct and proximate result of the foregoing negligence and disregard of duty by Keenum, John Whaley and David Wood were allowed to drive further north on River Road, whereupon a few minutes later the accident occurred in the manner hereinbefore described."

The defendants argue that there was no duty owed to the plaintiffs upon which liability can be based, and that, if there was a duty, the breach of it was not the proximate cause of the injuries to the plaintiffs. The latter issue is one for the triers of the facts, but we need not discuss it here because of our disposition of this matter on the first question.

 There has been much discussion, by the plaintiffs, of the doctrine of sovereign immunity, and the impact thereon of our decisions in Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107; Veach v. City of Phoenix, 102 Ariz. 195, 427 P.2d 335; and Patterson v. City of Phoenix, 103 Ariz. 64, 436 P.2d 613. But nowhere in the record can we find any attempt by the defendants to envelop them-

selves in the cloak of immunity. Nor can they do so since this Court in the most unquestionable terms relegated that archaic doctrine to the dustheap of history.

"We are of the opinion that when the reason for a certain rule no longer exists, the rule itself should be abandoned. After a thorough reexamination of the rule of governmental immunity from tort liability, we now hold that it must be discarded as a rule of law in Arizona and all prior decisions to the contrary are hereby overruled * * *." Stone, supra, 93 Ariz. at 387, 381 P.2d at 109.

Veach v. City of Phoenix, supra, and Patterson v. City of Phoenix, supra, re-affirmed that decision. But we did not, by those decisions, change the basic elements of actionable negligence the components of which are a duty owed to the plaintiff, a breach thereof and injury proximately caused by such breach. Morris v. Ortiz, 103 Ariz. 119, 437 P.2d 652.

■ It is the first of these elements that concerns us here. The general rule pertaining to governmental agencies and public officers is that

"* * * if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution."

Cooley, Torts, § 300, p. 385 (4th ed.). See also, Annala v. McLeod, 122 Mont. 498, 206 P.2d 811; Jacobson v. McMillan, 64 Idaho 351, 132 P.2d 773; Tomlinson v. Pierce, 178 Cal.App.2d 112, 2 Cal.Rptr. 700; Libertella v. Maenza, 21 Misc.2d 317, 191 N. Y.S.2d 191, aff'd., 16 A.D.2d 831, 229 N.Y.S. 2d 299; Scott v. City of New York, 2 A.D. 2d 854, 155 N.Y.S.2d 787, aff'd., 9 N.Y.2d 764, 215 N.Y.S.2d 72, 174 N.E.2d 745; Leger v. Kelley, 19 Conn.Sup. 167, 110 A.2d 635, aff'd., 142 Conn. 585, 116 A.2d 429; Mechem, Public Officers §§ 598–600; 65 C.J.S. Negligence § 4(8).

In Leger v. Kelley, supra, after discussing sovereign immunity of the defendant as commissioner of motor vehicles, the court resolved, in the defendant's favor, the question of his individual responsibility for alleged negligence of his duties as follows:

"'* * * The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance.' 2 Cooley, Torts (4th Ed.) p. 385; see also 43 Am.Jur. 84. "The law seems to be clear that if the duty discharged is a public duty and not a duty which the individuals owe to any particular person, then by their negligence or wanton or wilful omission in the performance of this public duty, the officers are not liable except to the state. People of State of Illinois for use of Trust Co. of Chicago v. Maryland Casualty Co., 7 Cir., 132 F.2d 850, 852. 'Before he [an officer] can be made liable for omitting to do something, the obligation to do it must be absolute, specific and imperative. The duty must also be one owing to the person injured by his nonfeasance.' 2 Shearman & Redfield, Negligence (Rev.Ed.) p. 804; see also Budrow v. Lynch, 7 Conn.Sup. 318–320. The statutory duty must be owing to the person injured, and not to someone else in order that a violation thereof shall constitute actionable negligence. Longstean v. Owen McCaffrey's Sons, 95 Conn. 486, 494, 111 A. 788." Leger v. Kelley, 110 A.2d at 638.

Perhaps this rule can best be clarified by its exception. In Schuster v. City of New York, 5 N.Y.2d 75, 180 N.Y.2d 265, 154 N.E.2d 534, the plaintiff's intestate, Arnold Schuster, responded to widely-published notices calling upon all private citizens to report to the public authorities the whereabouts of one Willie Sutton, a nationally-sought criminal. As a result of Schuster's well-publicized assistance Sutton was ap-

prehended, and also as a result Schuster was shot to death some three weeks later after having received threats on his life. These threats had been communicated to the authorities who made light of them and refused protection which Schuster had demanded. The court said:

"The single issue now presented is whether a municipality is under any duty to exercise reasonable care for the protection of a person in Schuster's situation. Predictions of dire financial consequences to municipalities are waved in our faces if Schuster's estate is allowed to recover for his death. An array of authorities is cited on the proposition that there is no liability to the general public from failure of police or fire protection (Murrain v. Wilson Line, 270 App.Div. 372, 59 N.Y.S.2d 750, affirmed 296 N.Y. 845, 72 N.E.2d 29; Steitz v. City of Beacon, 295 N.Y. 51, 64 N.E.2d 704, 163 A.L.R. 342; Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 159 N.E. 896, 62 A.L.R. 1199; Rocco v. City of New York, 282 App.Div. 1012, 126 N.Y. S.2d 198). One might think that the floodgates of liability have been opened in negligence and compensation cases against municipalities and other defendants where the liability is less clear than it is under the allegations of this complaint (cf. 31 Texas L.Rev. 630). In our view the public (acting in this instance through the City of New York) owes a *special duty* to use reasonable care for the protection of persons who have collaborated with it in the arrest or prosecution of criminals, once it reasonably appears that they are in danger due to their collaboration. If it were otherwise, it might well become difficult to convince the citizen to aid and co-operate with the law enforcement officers (see Note, 58 W.Va.L.Rev. 308). To uphold such a liability does not mean that municipalities are called upon to answer in damages for every loss caused by outlaws or by fire. Such a duty to Schuster bespeaks no obligation enforcible in the courts to exercise the police powers of government for the protection of every member of the general public. Nevertheless, where persons actually have aided in the apprehension or prosecution of enemies of society under the criminal law, a reciprocal duty arises on the part of society to use reasonable care for their police protection, at least where reasonably demanded or sought. Such a duty would be performed by the regular organs of government, in this instance, by the City of New York. The duty of everyone to aid in the enforcement of the law, which is as old as history, begets an answering duty on the part of government, under the circumstances of contemporary life, reasonably to protect those who have come to its assistance in this manner.

\* \* \* \* \* \*

"That distinction at best furnishes an incomplete formula, as the opinion of the court by Chief Judge Cardozo says in Moch Co. v. Rensselaer Water Co. (supra, 247 N.Y. at page 167, 159 N.E. at page 898). The opinion in the Moch case states: 'If conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward. Bohlen, Studies in the Law of Torts, p. 87.'

"In a situation like the present, government is not merely passive; it is active in calling upon persons 'in possession of any information regarding the whereabouts of' Sutton, quoting from the FBI flyer, to communicate such information in aid of law enforcement. Where that has happened, as here, or where the public authorities have made active use of a private citizen in some other capacity in the arrest or prosecution of a criminal, it would be a misuse of language to say that the law enforcement authorities are merely passive. They are active in calling upon the citizen for help, and in utilizing his help when it is rendered.

They have gone forward to such a stage, paraphrasing the opinion in the Moch case (supra), that inaction in furnishing police protection to such persons would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury. Under such circumstances, we there said 'there exists a relation out of which arises a duty to go forward'. Such a relationship existed here." [Emphasis added.] Schuster, supra, 180 N.Y.S.2d at 269–271, 154 N.E.2d at 537, 538.

■ Simply stated, there are situations where a government, or agency thereof, can by its conduct, narrow an obligation owing to the general public into a special duty to an individual, for the breach of which it is responsive in damages.

In fact, this Court has applied the same exception to the general rule in Veach v. City of Phoenix, supra, upon which the plaintiffs relied heavily. We there held that the City had a duty to furnish water for fire-protection purposes to the individual plaintiff who had requested it. As stated in this decision, the defendant owned a municipal water-distribution system in the City of Phoenix, and a municipality in the operation of a water system is a public-service corporation. It therefore had the same liabilities as a public-service corporation. The duty arose because of the relationship that existed between the City and the individual members of the general public. We stated, in Veach v. City of Phoenix, supra:

"The record shows that defendant owns the municipal water distribution system in the City of Phoenix; we have held that in operating a water system, a city is a public service corporation. Town of Wickenburg v. Town of Sabin, 68 Ariz. 75, 200 P.2d 342. It also appears to be the rule that a public service corporation is under a legal obligation to render adequate service impartially and without

discrimination to all members of the general public to whom its scope of operation extends. See Town of Wickenburg v. Town of Sabin, supra; 4 McQuillin Municipal Corporations, 2d Ed., § 1829.

\* \* \* \* \* \*

"In order to avoid misunderstanding we want to make it clear that under the rule we have adopted a municipality has no absolute duty to provide water for fire protection purposes to its inhabitants. However, when a city assumes the responsibility of furnishing fire protection, then it has the duty of giving *each person* or property owner such reasonable protection as others within a similar area within the municipality are accorded under like circumstances. \* \* \*." [Emphasis added.]

What the plaintiffs urge here is a doctrine that the obligations of public officers are duties owned personally to each and every individual member of the public. The extent of potential liability to which such a doctrine could lead is staggering. By our decisions in Stone, supra, Veach, supra, and Patterson, supra, we stripped the shackles of sovereign immunity from persons seeking redress for negligent injuries caused by public officers, but we did not relieve claimants of the responsibility of establishing all the elements of actionable negligence.

■ The duty of the defendants here is patently one owed to the general public, not to the individual plaintiffs, and no facts are pleaded which would bring this case into the realm of the exceptions to the rule.

The decision of the Court of Appeals is vacated, and the judgment of the Superior Court is affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER, and HAYS, JJ., concur.