684 P.2d 151

Wallace AUSTIN, special administrator of the Estate of Jesse Austin, deceased, for and on behalf of the deceased's children and mother, Plaintiff-Appellant,

v.

CITY OF SCOTTSDALE, a municipal corporation, Defendant-Appellee.

No. 17276–PR.

Supreme Court of Arizona, In Banc.

June 14, 1984.

Robert Stephan, Jr., Phoenix, for plaintiff-appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by M.E. Rake, Jr., Larry L. Smith, Phoenix, for defendant-appellee.

GORDON, Vice Chief Justice:

At 10:33 p.m. Thursday, May 6, 1976, an anonymous caller telephoned the Scottsdale Police Department and told the dispatcher that she had information that a certain person's life "might be in danger." The caller refused to give her name or the source of her information and said she did not know who was to be the perpetrator. However, she identified the potential victim

as Jesse Austin, gave his current residence as the Arizona State Hospital in Phoenix, and indicated that he was to be released from the hospital at 4:30 p.m. the following day to spend the weekend at a townhouse on Glenrosa (a street in Scottsdale). In response the dispatcher informed the caller that, because of lack of identity of the perpetrator and lack of a specific address, "we can't do much * * *. We'll keep an eye out." The dispatcher looked in the city telephone directory and, finding no Jesse Austin on Glenrosa, did nothing further in regard to the call.

At the time of the call, there was a patient by the name of Jesse Austin in the Arizona State Hospital. He was scheduled to be released for a weekend pass at 4:30 p.m. on Friday, May 7, 1976. His weekend was to be spent at his brother Wally Austin's townhouse on Glenrosa in Scottsdale. Jesse Austin did leave the Arizona State Hospital on the afternoon of May 7 and went to his brother's townhouse. He was found dead there on Saturday, May 8, 1976, having been stabbed approximately twenty-five times.[1]

Jesse Austin's estate, on behalf of his children and his mother, sued the City of Scottsdale in a wrongful death action. Prior to trial, the matter was dismissed as to the Austin children as a sanction for their repeated failure to appear for scheduled depositions. The matter went to trial with the estate appearing only on behalf of Jesse Austin's mother. After the estate's opening argument, the City of Scottsdale was granted a directed verdict on the entire action. Timely appeal was filed from both the dismissal and the directed verdict. Each was affirmed by the Court of Appeals in a memorandum decision and the estate petitioned this Court to review the matter. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.Civ.App.P. 23. We vacate the Court of Appeals' memorandum decision. The trial court's dismissal of the Austin children prior to trial

is affirmed. The directed verdict in favor of Scottsdale is reversed and the matter remanded for further proceedings.

## DISMISSAL OF THE CHILDREN

During the pendency of the trial, the City of Scottsdale sought to depose the three beneficiaries on whose behalf the action was filed. The depositions of Jesse Austin's two children, Jesse, Jr. and Shirley, were scheduled for September 11, 1979, September 12, 1979, September 17, 1979, November 15, 1979, November 29, 1979, January 3, 1980, February 19, 1980, March 20, 1980, June 16, 1980, July 28, 1980, and August 21, 1980. Neither Jesse, Jr. nor Shirley appeared at any of the scheduled times.

On March 5, 1980, the City of Scottsdale moved, pursuant to Ariz.R.Civ.P. 37(b), for dismissal of the two children from the lawsuit. In April, after the children missed yet another of the scheduled depositions, the trial court ordered each of them to submit to a deposition not later than fourteen days prior to trial and further ordered that, if they did not make themselves available, they would be dismissed from the suit. Because the children failed to appear for a deposition, they were dismissed from the action on the day of trial.

The estate argues on appeal that, because the children were not named plaintiffs in the action, rule 37(b) could not be applied to them. We disagree.

▬ The only possible plaintiff in a wrongful death action pursuant to A.R.S. § 12–612 is the surviving spouse, the personal representative, the parent, or the guardian. *Solomon v. Harman,* 107 Ariz. 426, 489 P.2d 236 (1971). The class of possible beneficiaries, however, is different and may include the surviving spouse, the children, the parents, or the estate of the deceased. *Id.* That children are not named plaintiffs but are merely beneficiar-

---

1. Further facts concerning the conspiracy to murder Jesse Austin and the source of the telephone caller's information can be found in *State v. Dwyer,* 120 Ariz. 291, 585 P.2d 900 (App.

1978). Briefly, Sandra Austin (the victim's wife) and Edward Dwyer (the wife's boyfriend) paid Anthony Ridings $1,500.00 to murder Jesse Austin.

ies does not preclude them from being "parties" to the litigation. Indeed, A.R.S. § 12–613, which establishes the measure of damages in wrongful death actions, indicates that damages shall be given "to the surviving *parties* who may be entitled to recover" (emphasis added). Similarly, in *Hurt v. Superior Court,* 124 Ariz. 45, 601 P.2d 1329 (1979), this Court answered affirmatively the question of whether both a surviving parent and a surviving child of the deceased could be proper *parties* under the wrongful death statute.

▮▮▮ Rule 37(b)(2) provides that sanctions may be imposed against a party who fails to obey an order to provide or permit discovery. The sanction of dismissal, though within the sound discretion of the trial court, *A.G. Rancho Equipment Co. v. Massey-Ferguson, Inc.,* 123 Ariz. 122, 598 P.2d 100 (1979), is "harsh and not to be invoked except under extreme circumstances," *Buchanan v. Jimenez,* 18 Ariz.App. 298, 299, 501 P.2d 567, 568 (1972). We do not find dismissal to be an inappropriate sanction here. The two children had ample opportunity to allow the taking of their depositions. They were subpoenaed for at least one of the scheduled depositions and were under court order to appear prior to trial. They did not appear even for the trial itself. Because there was no evidence of the amount of the children's damages, had the matter gone to the jury, any damages awarded to them would have been speculative at best. Given these circumstances, their dismissal from the action was not an abuse of discretion and is affirmed.

However, the record before us reveals that the children were possibly out of the country when their depositions were sought. They were in the custody of their mother and her current husband and did not respond to any correspondence from their grandmother, their father's estate's administrator, or its attorney. There is some intimation in the record that the true facts of their father's murder have been kept from them and that they are unaware of this legal action, the discovery attempts, or the court order. If this is true, the

children should not be precluded from seeking relief from the judgment against them pursuant to Ariz.R.Civ.P. 60(c)(6).

## DIRECTED VERDICT

As noted above, the City of Scottsdale requested and was granted a directed verdict after the estate had made its opening statement. We have previously indicated that the bringing of such a motion at that point in trial is a "vestige of past practice, without specific authorization in the modern Rules of Civil Procedure." *Trollope v. Koerner,* 106 Ariz. 10, 14, 470 P.2d 91, 95 (1970). We also have indicated that such a motion

> "is tolerated, only, as a means of ending quickly a cause that clearly cannot be won. * * * We must assume plaintiffs' ability to prove the facts [advanced in opening statement], and we must also view the stated and proffered facts before us in the light most favorable to plaintiffs' position."

*Id.* (footnotes omitted).

Both parties argued and the trial court decided the directed verdict motion based on *Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969). Under *Massengill* and its progeny, a public entity was liable to an individual in tort only when an official, by his or her conduct, had narrowed the obligation owed to the general public into a specific obligation owed to that individual. This Court overruled *Massengill* in *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982) announcing that:

> "We shall no longer engage in the speculative exercise of determining whether the tort-feasor has a general duty to the injured party, which spells no recovery, or if he had a specific individual duty which means recovery. Thus, the parameters of duty owed by the state will ordinarily be coextensive with those owed by others."

*Id.* at 310, 656 P.2d at 599 (citations omitted).

▮▮▮ Under *Ryan,* therefore, the City of Scottsdale, having opted to provide po-

lice protection, had a duty to act as would a reasonably careful and prudent police department in the same circumstances.[2] The Court of Appeals recognized this duty in its memorandum decision but found no breach. We reemphasize that we view the facts before us in the light most favorable to the estate. We find several proffered facts which, if established and if believed by the jury, would demonstrate that a reasonably careful and prudent police department would have done more than did the Scottsdale Police Department in this case and that the actions which were taken were insufficient to meet the standard of care. The first of these facts is that the Scottsdale Police Department violated its own procedure for handling telephone calls such as the one received in this case. The City of Scottsdale acknowledged in its response to interrogatories that the call in question was an "emergency" call. According to the Scottsdale Police Department's Manual of Procedure §§ 4090.0 and 4090.1, an emergency call is classified as urgent, requires immediate attention, and is to be assigned to the most readily available unit. This procedure was not followed. The second relevant fact is that the Supervisor of Patrolmen of the Scottsdale Police Department acknowledged in his deposition that the police department "should have attempted to inform [the victim] or his family of the threat." This was not done. The estate was also prepared to present expert testimony to the jury that the Scottsdale Police Department failed to act reasonably in the circumstances. A former Chief of Police of the Phoenix Police Department indicated by affidavit (1) that the Scottsdale Police Department failed to act in a reasonable, careful manner; (2) that the Scottsdale Police Department failed to provide reasonable protection as would other municipal police departments; and (3) that the Scottsdale Police Department's failure to act on the information concerning the potential murder of Jesse Austin and spe-

cifically its failure to notify the Arizona State Hospital where Jesse Austin was confined was clearly negligent and involved a serious risk of harm. Because we believe that a reasonable jury could find that the City of Scottsdale breached its duty by not doing more than it did, we cannot uphold the directed verdict.

The memorandum opinion of the Court of Appeals is vacated; the trial court's dismissal of the children is affirmed; the directed verdict in favor of the City of Scottsdale is reversed and the matter is remanded to the trial court for further proceedings.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

general insurer of safety nor absolutely liable for all harms to its citizens. *Cf. DeLong v. County of Erie,* 60 N.Y.2d 296, 457 N.E.2d 717, 469 N.Y.S.2d 611 (1983).

---

**2.** This is not a duty to protect each citizen within the City of Scottsdale's geographic boundaries from all harms. By establishing a police department, a municipality becomes neither a