808 P.2d 1253

**Raul NEWMAN and Donna Newman, his wife; Ronald Newman, By and Through his parents and next friends, Raul and Donna Newman, Plaintiffs–Appellants,**

v.

**MARICOPA COUNTY, a political subdivision of the State of Arizona, Defendant–Appellee.**

No. 1 CA–CV 88–309.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 22, 1991.

Review Denied May 7, 1991.

**502**

Larry G. Haddy, Phoenix, for plaintiffs-appellants.

Maricopa County Attorney's Office by Richard A. Stewart, Deputy Co. Atty., Phoenix, for defendant-appellee.

J. LaMar Shelley, Mesa, for amicus curiae League of Cities and Towns.

## OPINION

FIDEL, Judge.

The trial court granted Maricopa County's motion to dismiss plaintiffs' personal injury suit for failure to state a claim. Plaintiffs appeal and we reverse. The trial court determined—in our view prematurely—that the County owed plaintiffs no duty. We conclude that plaintiffs' complaint—necessarily accepted as true for the purpose of the motion—sufficiently stated a claim to withstand a motion to dismiss. We additionally conclude that resolution of the question of the County's duty required a more fully developed record concerning the County's power and policies and should have been deferred for testing by motion for summary judgment following discovery on those points.

## FACTS AND TRIAL COURT PROCEEDINGS

Raul Newman and his son Ronald ("plaintiffs") were injured while riding all-terrain vehicles on a trail on property owned by named defendants (the "property owners"), who are not parties on appeal. The trail, according to the complaint, was "well-defined" and known by all defendants to be used by public riders. The day before plaintiffs' accident, Brent Vaughn, a teenager, was killed while riding in the same location. Both accidents occurred at the top of a natural bowl area, where the trail suddenly ended in a sheer sixty-foot drop—the product of an excavation cut by the property owners in the course of their sand and gravel business.

The Maricopa County Sheriff's Department ("the Sheriff") investigated the scene the day Brent Vaughn was killed. During this investigation, the Sheriff took no steps to close the trail, post signs, or initiate remedial discussions with the property owners. Plaintiffs' accident took place at the same cliff the following day.

Plaintiffs sued the property owners, contending that the sudden drop constituted a hidden and hazardous condition. Plaintiffs additionally sued the County, claiming that the Sheriff breached a duty, after discovering this hazard and its public usage during the Vaughn investigation, to take preventive or corrective measures for the protection of foreseeable later users of the trail.[1]

Maricopa County moved to dismiss pursuant to Ariz.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. The County argued that the Sheriff had no duty to correct or warn against a hazardous condition on private land.

Plaintiffs responded that their complaint had sufficiently outlined a theory of duty to withstand the County's motion to dismiss. However, plaintiffs also asked that the court treat the motion as one for summary judgment and permit the plaintiffs to develop expert testimony and discovery "if

---

**1.** Brent Vaughn's parents, co-plaintiffs against the property owners, have not sued the County and are not parties to this appeal.

... the Court feels that additional evidence is necessary." The County opposed the latter request, stating: "Presentation of evidence would be inappropriate. Either the complaint states a claim or it does not."

The trial court proceeded to treat and grant the motion as one to dismiss. After the trial court embodied this ruling in an appealable judgment pursuant to Ariz.R. Civ.P. 54(b), plaintiffs brought this timely appeal.

## DISPOSITION

■ In reviewing the grant of a motion to dismiss for failure to state a claim, this court accepts as true the factual allegations of the complaint. The moving party has the burden of showing that plaintiff's complaint does not state a claim upon which relief may be granted. 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–5], at 12–63 (1990). The motion should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1357, at 325 (1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

■ Whether a defendant has a duty to protect others from foreseeable, unreasonable risks of harm is initially a question of law for the courts to decide. *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). Plaintiffs cite *Austin v. City of Scottsdale*, 140 Ariz. 579, 684 P.2d 151 (1984), to establish that Maricopa County owed them such a duty.

In *Austin*, the Scottsdale police department received a telephonic warning that an identified person's life was threatened, but failed to follow its ordinary emergency procedures to notify the threatened victim or his family. When the threat proved accurate and the survivors sued, the trial court found no duty and directed a verdict for the City. The Supreme Court reversed, stating that the City, "having opted to provide police protection, had a duty to act as would a reasonably careful and prudent police department in the same circumstances." 140 Ariz. at 581–82, 684 P.2d at 153–54. Plaintiffs argue that this statement defines the present duty of the Sheriff: upon investigating the Vaughn incident and discovering the widespread public use of a deadly trail on private land, a reasonably prudent sheriff, according to plaintiffs, would have undertaken to correct the harm or warn future users against it.

Maricopa County responds that *Austin* is limited to cases of predicted criminal acts and does not contemplate a duty of public protection against other kinds of harm. We do not interpret *Austin* so narrowly. The supreme court's pronouncement in *Austin* was broad, as are the functions of law enforcement agencies. Crime prevention, though a primary function, is not the sole responsibility of such agencies; they routinely perform such broader protective functions as directing traffic, aiding motorists, assisting in medical emergencies, and investigating accidents. The Maricopa County Sheriff's Department, indeed, is specifically authorized by statute to carry out search and rescue operations. Ariz. Rev.Stat.Ann. § 11–441(C) (1990).[2] Law enforcement agencies perform all such activities subject to the duty that *Austin* described: "to act as would a reasonably careful and prudent [agency] in the same circumstances."

■ The County attempts to further distinguish *Austin*, however, because the endangered person was identified in that case. No affirmative duty arose under these facts, according to the County, because there was no special relationship between the Sheriff and the plaintiffs. This argument harks back to the abandoned *Massengill v. Yuma County* doctrine that no liability arises from public officers' gen-

---

**2.** Ariz.Rev.Stat.Ann. § 11–441(C) states:
The sheriff shall conduct or coordinate within the county search or rescue operations involving the life or health of any person, or may assist in such operations in another county at the request of that county's sheriff, and may request assistance from any persons or agencies in the fulfillment of duties under this subsection.

eral duty to the public unless that duty has narrowed to become a special duty to an individual. 104 Ariz. 518, 523, 456 P.2d 376, 381 (1969). Our supreme court overruled *Massengill* in *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982), stating that it would no longer "engage in the speculative exercise of determining whether the tort-feasor has a general duty to the injured party, which spells no recovery, or if he had a specific individual duty which means recovery." 134 Ariz. at 310, 656 P.2d at 599. Public entities, like private entities, owe the duty after *Ryan* to conduct their activities in such a way as to avoid subjecting others within the range of foreseeable risk to an unreasonable risk of harm.

■ We conclude that the Sheriff had the duty in this case, as in *Austin,* to act as a reasonably prudent law enforcement agency would have acted under the circumstances. We further conclude pursuant to *Ryan* that plaintiffs cannot be placed outside the range of duty—that is, the range of foreseeable risk—as a matter of law.

■ Our decision of these points is peripheral, however, to the more essential question whether the Sheriff had power to undertake effective preventive or corrective measures in this case. *Amicus curiae* League of Arizona Cities and Towns (the League) nicely underscores this question when it argues that the Sheriff had neither power nor means to take corrective action on private property and, accordingly, had no duty to attempt what it lacked power to perform. The League adds that the Sheriff's powers are derivative, *see Transamerica Title Ins. Co. v. Cochise County,* 26 Ariz.App. 323, 548 P.2d 416 (1976), and that there is no statutory authority for counties or their sheriffs to enter private property to remedy a hazardous condition. Indeed, the League argues, the County would have been guilty of trespass had it attempted corrective action.

We cannot accept this argument in whole. First, the argument assumes that the necessary locus of remedial action was private land. Because this case was decided solely on the basis of plaintiffs' com-

plaint, the undeveloped record does not permit that assumption. We do not know, among other things, what route led to the cliff from public roads, what distance lay between, or whether an effective warning might have been posted on *public* land at the point where a private trail diverged. Had the County proceeded by motion for summary judgment, plaintiffs would have faced the burden to supply such evidence; the County's 12(b)(6) motion tested only the complaint.

Second, the League's argument blurs a point that should remain distinct. We recognize that counties and their sheriffs have no free-floating charter to seek out and post or repair hazardous conditions on private land. Here, however, there was no question of the Sheriff trespassing or requesting entry to seek out potential danger; the Sheriff was officially present to investigate the accomplished danger of a death. *See State v. Fisher,* 141 Ariz. 227, 237, 686 P.2d 750, 760, *appeal dismissed,* 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984) ("Furthermore, '[t]he right of the police to enter [a dwelling] and investigate in an emergency . . . is inherent in the very nature of their duties as peace officers. . . .'") (quoting *United States v. Barone,* 330 F.2d 543, 545 (2d Cir.), *cert. denied,* 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964)). The question, thus, is not whether the Sheriff was entitled to enter, but the extent of his responsibility once officially there.

The *amicus* brief is helpful, nonetheless, insofar as it highlights the question of power. Power and duty are not coextensive. However, whatever duty of reasonable prudence the Sheriff had while investigating Brent Vaughn's death, that duty was surely *no greater* than its power. For this reason, we are unable to accept plaintiffs' argument that the question whether preventive or precautionary steps should have been taken is entirely a detail question for the jury, not a duty question for the court. *See Markowitz,* 146 Ariz. at 355, 706 P.2d at 364 ("We again point out that the existence of a duty is not to be confused with details of the standard of conduct."). It

might indeed be up to a jury to determine what, if any, open protective course the Sheriff should have taken. As the supreme court said in *Markowitz*, "[T]he concept of duty is not a question of whether ... the defendant should have ... warned of or removed the danger or have taken any other particular action." *Id.* at 356, 706 P.2d at 369. A preliminary question, however, is whether any protective course lay within the Sheriff's power to take.

It cannot be maintained that public officers are wholly powerless to undertake protective measures as to hazardous conditions on private land. Fire sites, for example, are often cordoned off both during and after fires to prevent public access to the danger zone. Unfortunately, whether discovery of a deadly condition during the investigation of Brent Vaughn's death permitted the Sheriff to undertake protective measures is wholly undeveloped in this record. Likewise undeveloped is the question what, if any, policies and procedures the Sheriff had established to alleviate hazards, encountered during death or accident investigations, that jeopardize the public but exist on private land.

These questions of the Sheriff's power and procedures overlap, although the former is largely one of law and the latter largely one of fact. Of the latter's relevance, *Austin* leaves no doubt. The court there emphasized, in finding a jury question of breach of duty, that the Scottsdale police department had violated its own procedures for handling emergency phone calls. 140 Ariz. at 582, 684 P.2d at 154. Without further development of this issue, we are unable to resolve the question of duty.[3] Nor do we believe that the trial court could fairly do so on the record before it.

Indeed, the trial court was informed that discovery was outstanding on this very question. Plaintiffs stated in their responding memorandum: "Plaintiffs have requested ... discovery from Maricopa County regarding guidelines imposed upon its officers in the investigation of hazardous situations involving a death, and much as in *Austin*, ... are prepared to show that Maricopa County violated its own rules." The County insisted in reply, however, that its motion be granted or denied on the complaint alone and not deferred for the development of such evidence:

> Plaintiffs ... represent that they hope to be able to present evidence that the County violated its own rules. Again, plaintiffs are confusing the standard of care with the duty. Such evidence may be relevant to a breach of duty if one exists, but is irrelevant to the question of law raised by this motion.

The County thus necessarily consented to let its motion stand or fall on the assertion that it could "never be liable, no matter what the circumstances," for a failure to undertake preventive or precautionary measures with respect to a hazardous condition discovered during an official death investigation on private land. *See Markowitz*, 146 Ariz. at 357, 706 P.2d at 369 ("To postulate that the possessor of land has no duty at all to protect its invitees or warn of specific types of danger is to postulate that it can never be liable, no matter what the circumstances."); *see also Carrow Company v. Lusby*, 167 Ariz. 18, 24, 804 P.2d 747, 753 (1990) (paraphrasing *Markowitz*: "To postulate that the owner of livestock has no duty at all [to motorists on public highways] is to postulate that the owner can never be liable, no matter what the circumstances."). Like the supreme court in those cases, we "decline to adopt such a view" here. *Id.*

This is not to say that we read *Austin*, as the dissent suggests, "to impose a duty upon a 'reasonable' sheriff to safeguard trespassers [from] dangers on private property." Our decision is far narrower, and its theme is prematurity, not duty. We hold only that it does not appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

---

**3.** Like the dissent, we look to W. Prosser & R. Keeton, *The Law of Torts* § 53 (5th ed. 1984). We find there the following reminder: "[I]t should be recognized that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Id.* at 358.

entitle him to relief." 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1357, at 325.

The dissent argues that "[t]he necessary facts are known, available, and undisputed." We disagree. The County itself maintains only that the facts are irrelevant to a contest over the adequacy of plaintiffs' complaint. We do not foreclose the possibility that the County might prevail on remand by contesting whether the Sheriff had remedial or precautionary power, whether the Sheriff violated its own policies, or whether any open course of prevention could have been achieved in time to do these plaintiffs good. The development of these points, however, should have been permitted by discovery and motion for summary judgment.

The allocation of burdens in a motion for summary judgment has recently been described by our supreme court:

> [A] party moving for summary judgment need merely point out by specific reference to the relevant discovery that no evidence existed to support an essential element of the claim. Conclusory statements will not suffice, but the movant need not affirmatively establish the negative of the element.... If the party with the burden of proof on the claim or defense cannot respond to the motion by showing that there is evidence creating a genuine issue of fact on the element in question, then the motion for summary judgment should be granted.

*Orme School v. Reeves,* 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 328, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (White, J., concurring)). The trial court should have proceeded in this fashion to test plaintiffs' ability to produce evidence to support the bare, but adequate allegations of their complaint.

The judgment of the trial court is reversed, and this matter is remanded for proceedings consistent with this opinion.

MICHAEL C. NELSON, J. pro tem., concurs.

GERBER, Presiding Judge, dissenting.

I dissent because I have several problems with the majority analysis.

In the first place, the majority gratuitously offers the plaintiff more time to develop facts to avoid dismissal. Having the opportunity to request more time and discovery, neither the parties nor the trial court saw fit to seek either. The trial court felt it had sufficient information to rule at the time of the Rule 12(b)(6) motion. Neither in the trial court nor here has the plaintiff sought the additional factual discovery which, at this distant remove, the majority now grants on its own initiative.

Secondly, this 12(b)(6) motion raises a legal question about duty, not a factual question about details of conduct. The proper focus in such a motion is whether there exists a legal duty under the facts pled in the complaint, i.e., whether under our law a sheriff has a duty to safeguard trespassers from dangers known to the sheriff to exist on private property. Regardless of the answer to that question, it remains a legal, not a factual question—a "policy question" as it is described in *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). Further factual discovery about details of the sheriff's powers and procedures will not shed light on that policy question because it is a question not of details but of the nature of the relationship between the parties. On the present facts, an appellate court could hold that there does exist such a duty, or conversely that there does not, but neither conclusion is helped by discovering more details about the sheriff's operating procedures. The necessary facts are known, available, and undisputed.

Third, I have hesitation about the majority's broad interpretation of *Austin* to impose a duty upon a "reasonable" sheriff to safeguard trespassers about dangers on private property. Formerly, for many centuries in fact, the law reserved this duty to the private property owner. Apart from crime or disease, dangers on private property have not traditionally been considered subjects for safeguarding by public law enforcement agencies. Factually dissimilar

in its criminal and geographic setting, *Austin* is now apparently read to mean that a reasonable law enforcement officer might have to warn trespassers of known dangers on private property just as the police must warn an identified victim of a telephoned criminal threat. Because of the dissimilarity between the sheriff's civil and criminal authority, as well as that between public and private property, I cannot interpret *Austin* to support any such analogy.

Furthermore, the majority's interpretation of *Austin* seemingly adopts the "reasonable man" [person] standard as the touchstone for determining the existence of duty. I have two problems here, one theoretical, the other practical. The theoretical one lurks in the footnote below detailing the wondrously unrealistic perfectionism of this odious standard-bearer who stands as a monument in our tort law.[4] The more practical problem with the majority's use of this test is that the reasonable-person standard does not generate a duty but instead *assumes* a duty derived elsewhere and then measures its execution by a standard of prudence. *See* W. Prosser & R. Keeton, *The Law of Torts* § 53, at 356 (5th ed. 1984). Reasonable-person conduct is generally a jury question precisely because it

is factual rather than policy. In the present case, our concern is—or should be—not whether a reasonable sheriff might have acted more prudently under his powers and procedures, but whether the law requires this official to act at all, i.e., whether there exists a duty of care in the first place. This policy question is not a question about execution of duty but of its very existence. It is accordingly for a court, not a fact-finder to decide, and it turns not on details of conduct but on the relationship between the parties.

This majority's analysis generates my further hesitation over its power/duty discussion. In my view, the question in this case at this point concerns the existence of legal duty—a matter of "policy." The determination of legal duty logically precedes questions of power and procedure. Discovering the sheriff's power and procedures as a prerequisite to determining duty confuses the existence of duty with specific details of conduct, a confusion our courts have repeatedly sought to dispel. Power and duty, furthermore, are not necessarily intertwined. Some duties exist without the power of implementation (e.g., preventing crimes, sickness, pollution), and some pow-

---

4. It is impossible to travel anywhere or to travel for long in that confusing forest of learned judgments which constitutes the Common Law of England without encountering the Reasonable Man.... The Reasonable Man is always thinking of others; prudence is his guide, and "Safety First," if I may borrow a contemporary catchword, is his rule of life. All solid virtues are his, save only that peculiar quality by which the affection of other men is won.... While any given example of his behavior must command our admiration, which taken in the mass his acts create a very different set of impressions. He is one who invariably looks where he is going, and is careful to examine the immediate foreground before he executes a leap or a bound; who neither star-gazes nor is lost in meditation when approaching trap doors or the margin of a dock; who records in every case upon the counterfoils of checks such ample details as are desirable, scrupulously substitutes the word "Order" for the word "Bearer," crosses the instrument "a/c Payee only" and registers the package in which it is dispatched; who never mounts a moving omnibus and does not alight from any car while the train is in motion; who investigates exhaustively the bona

fides of every mendicant before distributing alms, and will inform himself of the history and habits of a dog before administering a caress; who believes no gossip, nor repeats it, without firm basis for believing it to be true; who never drives his ball till those in front of him have definitely vacated the putting-green which is his own objective; who never from one year's end to another makes an excessive demand upon his wife, his neighbors, his servants, his ox, or his ass.... Devoid, in short, of any human weakness, with not one single saving vice, sans prejudice, procrastination, ill-nature, avarice, and absence of mind, as careful for his own safety as he is for that of others, this excellent but odious character stands like a monument in our Courts of Justice, vainly appealing to his fellow-citizens to order their lives after his own example. This engaging quote comes from "Lord Justice Morrow" in *"Fardell v. Potts,"* a wholly fictitious case crafted by A.P. Herbert in his *Uncommon Law* (1955). Its fictitious origin does not detract from its valid insight that the reasonable person test sets a standard of total perfectionism attainable only by a legal superman or woman, not by mere mortals.

ers exist without a correlative duty (e.g., rescuing a drowning person).

For the foregoing reasons, I cannot find either in *Austin* or any of our other law any duty on the sheriff in this scenario. I would accordingly uphold the trial court's order of dismissal.

Note: The Honorable Michael C. Nelson, Judge *Pro Tempore*, was assigned by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this matter pursuant to Ariz.Rev.Stat.Ann. §§ 12-145-47 (1990).