IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



| | | |
|---|---|---|
| SARAH WERTHEIM, in her individual capacity, and as Personal Representative of the ESTATE OF CARTER WERTHEIM, | ) ) ) ) ) | 2 CA-CV 2004-0109 DEPARTMENT B |
| Plaintiff/Appellant, | ) ) | O P I N I O N |
| v. | ) ) | |
| PIMA COUNTY; CLARENCE W. DUPNIK, PIMA COUNTY SHERIFF; TUCSON POLICE DEPARTMENT; and the CITY OF TUCSON, | ) ) ) ) ) | |
| Defendants/Appellees. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20023622

Honorable Michael Alfred, Judge

AFFIRMED

---

Law Office of Richard D. Grand
 By Richard D. Grand                                      Tucson

    and

Law Office of Michael Meehan
 By Michael J. Meehan                                     Tucson
                                    Attorneys for Plaintiff/Appellant

Barbara LaWall, Pima County Attorney
 By Thomas E. Dugal                                                                  Tucson
                                           Attorneys for Defendants/Appellees
                                              Pima County and Dupnik

Mesch, Clark & Rothschild, P.C.
 By Richard Davis and Jeanette M. Boulet                                 Tucson
                                              Attorneys for Defendant/Appellee
                                                    City of Tucson

---

F L Ó R E Z, Presiding Judge.

¶1        Sarah Wertheim, the widow of Carter Wertheim and the personal representative of his estate, brought this wrongful death action against Pima County and Pima County Sheriff Clarence Dupnik (collectively, the County) and the City of Tucson. The trial court granted defendants' motion for judgment as a matter of law following Wertheim's presentation of evidence at trial.  She appeals.  We review the court's ruling de novo to determine whether the evidence and reasonable inferences therefrom, viewed in the light most favorable to Wertheim, demonstrate that no material issues of fact existed and that the County and the City were entitled to judgment as a matter of law.  *See Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 92 P.3d 882 (App. 2004).  We affirm.

¶2        Wertheim presented the following evidence.  On July 29, 2001, Kenneth Dillard shot and killed Carter Wertheim at the home of Dillard's estranged wife, Shari Dillard, and then killed himself.  Kenneth Dillard was a Tucson Police Department (TPD) detective assigned to the Metropolitan Area Narcotics Trafficking Interdiction Squad

(MANTIS) and was supervised by both TPD and the Pima County Sheriff's Department (PCSD). Dillard's immediate supervisor was TPD Sergeant Robert Martin. In the MANTIS chain of command, Martin reported to PCSD Lieutenant Ron Benson, and Benson reported to MANTIS commander and TPD Captain Robert Shoun. Dillard was not on duty at the time of the shooting, but he shot Carter with a gun he used as his primary on-duty weapon. The gun was not a TPD-issued weapon but was Dillard's personal property that he had purchased and that TPD had approved for Dillard to use on duty.

¶3 On May 27, 2001, approximately two months before the shooting, Dillard had entered the Wertheims' residence in the middle of the night and had found his wife and Carter asleep in bed together. Dillard confronted the two. He yelled and screamed at the couple and then struck himself violently over the head with a large, heavy flashlight, causing himself serious injury. After PCSD responded to Shari's 911 call, Dillard was taken to a hospital for emergency medical treatment and then was voluntarily admitted to a psychiatric hospital.

¶4 PCSD reported the incident to TPD, and TPD ordered Dillard to undergo a fitness-for-duty evaluation. When Dillard was released from the psychiatric hospital, TPD granted him leave from work, and he spent approximately four weeks with family members out of state. When he returned, TPD placed Dillard on limited duty pending the outcome of the evaluation. No criminal charges were pursued against Dillard as a result of the May 27 incident.

3

¶5    On July 13, 2001, Shari was granted an order of protection against Dillard. On the same day, Carter was granted an injunction from harassment by Dillard. The order of protection, if served, would have required Dillard to "not possess, receive and/or purchase firearms." The injunction was served on Dillard; the order of protection was not.

¶6    On Sunday, July 15, Shari contacted Lieutenant Benson and asked for his "assistance in serving" the order of protection. She also apparently told Benson that Dillard had been stalking her.[1] Benson did not question Shari about the details of the order and did not request or obtain a copy of it, but he told her that he "would help her to the extent [he] could." Benson then contacted Sergeant Martin and asked if TPD procedures required Dillard to "stay at one place" until the process server arrived or if TPD was obligated to assist Shari in having the order served on Dillard. Martin told Benson no such policy or obligation existed, and Benson did nothing else about the order.

¶7    After the May 27 incident, PCSD had given Dillard's gun to TPD along with other items deputies had collected from Dillard's MANTIS vehicle that night. Dillard's gun remained in TPD's possession until sometime during the week of July 16 through 20 when Sergeant Martin returned it to Dillard at his request. Dillard told Martin he needed the gun because, although he was assigned to desk duty, he was driving to and from work daily in his MANTIS vehicle. Martin explained to the jury that police officers are required to be

---

[1]Wertheim claims Shari testified about this in her deposition, the transcript of which was read to the jury but not recorded by the court reporter. The transcript is not in the record before us, but no defendant disputes that that testimony was presented to the jury.

armed while on duty and are "required to intervene" if they observe a felony being committed or some other "incident." Martin conferred with Lieutenant Benson and Captain Shoun about returning Dillard's gun; neither voiced an objection. Martin returned the gun even though the fitness-for-duty evaluation had not been completed and even though the psychologist who was to conduct the evaluation told the TPD psychologist on July 18 that Dillard should not be given his weapon until the evaluation was completed. As noted above, Dillard used the gun to kill Carter and himself on July 29.

¶8        Wertheim asserts that the trial court erred in granting the motion for judgment as a matter of law, arguing the jury could reasonably have concluded, based on these facts and reasonable inferences therefrom, that the City and the County had negligently investigated the circumstances that had triggered TPD's decision to conduct the fitness-for-duty evaluation and the facts underlying Shari's order of protection; that Dillard's supervisors had failed to recognize and/or pursue Dillard's criminal conduct and the domestic violence issues Wertheim asserts should have been apparent in the situation; and that, therefore, they had failed to comprehend the risk Dillard had posed to Carter and had negligently returned Dillard's gun to him. Wertheim further asserts that TPD's negligence in returning Dillard's gun to him was a proximate cause of Carter's death.

¶9        "The basic elements of actionable negligence are a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach." *Ballesteros v. State*, 161 Ariz. 625, 627, 780 P.2d 458, 460 (App. 1989). The trial court granted judgment as a

matter of law on the element of causation. It concluded that, "at best, the probabilities [that the defendants had or had not caused Carter's death] are evenly balanced." Thus, although the court recognized that causation is generally a question of fact, it concluded a reasonable jury could not have found causation here by a preponderance of the evidence.

¶10        We may affirm a trial court's ruling if it is correct for any reason. *Glaze v. Marcus*, 151 Ariz. 538, 729 P.2d 342 (App. 1986). We need not reach the issue of causation, because we conclude that the County and City owed no duty to Carter. "Whether a legal duty exists is a question of law that we review *de novo*." *Clark v. New Magma Irrigation & Drainage Dist.*, 208 Ariz. 246, ¶ 8, 92 P.3d 876, 878 (App. 2004).

> The question of duty . . . is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff. If the answer is no, the defendant is not liable even though he may have acted negligently in light of the foreseeable risks.

*Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985).

¶11        Put in the context of the relationships here, the question is whether an employer (the City and/or the County) owed a duty to a third person (Carter) injured by the conduct of its off-duty employee (Dillard). Arizona has adopted and follows the Restatement (Second) of Torts § 315 (1965) and its related sections.

> In Arizona, there is no duty to control the conduct of a third party unless "'(a) a special relation exists between the [defendant] and the third person which imposes a duty upon the [defendant] to control the third person's conduct, or (b) a special relation exists between the [defendant] and the [plaintiff] which gives to the [plaintiff] a right of protection.'"

6

> *Martinez v. Woodmar IV Condominiums Homeowners Ass'n*, 189 Ariz. 206, 207-08, 941 P.2d 218, 219-20 (1997), *quoting Martinez v. Woodmar IV Condominiums Ass'n*, 187 Ariz. 408, 409, 930 P.2d 485, 486 (App. 1996), *quoting* Restatement (Second) of Torts § 315 (1965) (brackets added by supreme court); *Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 265, 782 P.2d 739, 741 (App. 1989). Therefore, a duty to control the conduct of a third party arises only when a special relationship exists between the defendant and the third party, such as "parent-child, master-servant, possessor of land-licensee, or guardian-ward." *Fedie*, 162 Ariz. at 265, 782 P.2d at 741; *see also* Restatement (Second) of Torts §§ 316-319. And a duty to protect arises only where there is a special relationship between the defendant and the victim, "such as carrier-passenger, innkeeper-guest, landlord-invitee, guardian-ward, teacher-student, or jailer-prisoner." *Fedie*, 162 Ariz. at 265, 782 P.2d at 741; *see also* Restatement (Second) of Torts §§ 314A, 320; *Martinez*.

*Bloxham v. Glock Inc.*, 203 Ariz. 271, ¶ 7, 53 P.3d 196, 199 (App. 2002); *see also Collette v. Tolleson Unified Sch. Dist. No. 214*, 203 Ariz. 359, 54 P.3d 828 (App. 2002); *Tamsen v. Weber*, 166 Ariz. 364, 802 P.2d 1063 (App. 1990); *Cooke v. Berlin*, 153 Ariz. 220, 735 P.2d 830 (App. 1987), *disapproved on other grounds, Dunn v. Carruth*, 162 Ariz. 478, 784 P.2d 684 (1989); *Davis v. Mangelsdorf*, 138 Ariz. 207, 673 P.2d 951 (App. 1983).

¶12    Although Dillard and the City and the County had an employment relationship, that relationship did not impose a duty on either to control the actions Dillard took here. Under the Restatement (Second) of Torts § 317 (1965), an employment relationship imposes a duty on the employer "to exercise reasonable care . . . to control his servant while acting outside the scope of his employment" only when the employee is on the employer's premises or using the employer's chattel. Neither was the case here. The gun

7

Dillard used to kill Carter was Dillard's property, and Dillard was not on duty or on defendants' premises when he shot Carter.

¶13 That the gun was also Dillard's service weapon did not create a duty. For a duty to exist under the Restatement, the employee must use the chattel of the employer. The obvious basis for this requirement is that the employer may exercise control over the use of its property. TPD had authorized Dillard to use his own gun in his employment, but Wertheim has cited no authority for the proposition that, by doing so, TPD gained control over the property itself.

¶14 Nor do we find the requisite relationship between the City or the County and Carter to create a duty to protect him. Wertheim argues a duty arose because TPD and PCSD should have foreseen the danger Dillard had posed to Carter as "an object of . . . Dillard's emotions," which they would have understood had they fully investigated the May 27 incident at the Wertheims' residence and the order of protection Shari had subsequently obtained. But, even if the jury could have determined some risk had reasonably been foreseeable, "foreseeable danger d[oes] not dictate the existence of a duty but only the nature and extent of the conduct necessary to fulfill the duty." *Martinez v. Woodmar IV Condos. Homeowners Ass'n*, 189 Ariz. 206, 211, 941 P.2d 218, 223 (1997); *see also Riddle v. Ariz. Oncology Servs., Inc.*, 186 Ariz. 464, 467, 924 P.2d 468, 471 (App. 1996) ("Foreseeability alone . . . does not create a duty.").

¶15    We find this case analogous to *Riddle*. In that case, an injured motorist sued an employer after colliding with a car being driven by the employer's impaired employee. The employer had ordered the employee to leave work because she had been "conspicuously intoxicated and incapable of performing her work duties." 186 Ariz. at 465, 924 P.2d at 469. Relying in part on Restatement § 317, we found the employer had owed no duty of care to the injured motorist even though the employer had known the employee had a history of drug abuse and "knew or should have known" that she could not safely operate a motor vehicle when she left the premises. 186 Ariz. at 468, 924 P.2d at 472.

¶16    Wertheim attempts to distinguish *Riddle* on the ground that the employer had "not furnish[ed the employee] with any intoxicants or with a vehicle." *Id.* at 468, 924 P.2d at 472. Although we noted that fact, we did so in pointing out that courts in other cases had found no duty existed even when employees had consumed alcohol on the employer's premises, *Bruce v. Chas Roberts Air Conditioning, Inc.*, 166 Ariz. 221, 801 P.2d 456 (App. 1990), and had contributed to the purchase and consumption of the alcohol on his premises, *Keckonen v. Robles*, 146 Ariz. 268, 705 P.2d 945 (App. 1985). Contrary to Wertheim's suggestion, we are not persuaded that the outcome in *Riddle* necessarily would have been different had the employer ordered the employee to leave and then handed her her keys. *See Markowitz* (in absence of duty, defendant not liable even for negligent action).

9

¶17        We find distinguishable the principal cases on which Wertheim relies. Both *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 961 P.2d 449 (1998),[2] and *Austin v. City of Scottsdale*, 140 Ariz. 579, 684 P.2d 151 (1984), addressed allegations that 911 operators had negligently responded to emergency calls by either failing to act on a reported threat (*Austin*) or assigning a low priority to an eventual murder victim's call for help (*Hutcherson*). Neither case addressed an injury caused by a law enforcement officer's off-duty conduct. Wertheim seizes on the court's statement in *Austin* that "the City of Scottsdale, having opted to provide police protection, had a duty to act as would a reasonably careful and prudent police department in the same circumstances." 140 Ariz. at 581-82, 684 P.2d at 153-54. We do not interpret that language as broadly as Wertheim would have us do. Essentially, she contends that, under *Austin*, a police agency, by its very existence, owes a duty to all persons to act reasonably at all times under all circumstances. *Cf. Hafner v. Beck*, 185 Ariz. 389, 391, 916 P.2d 1105, 1107 (App. 1995) ("We do not understand the law to be that one owes a duty of reasonable care at all times to all people under all circumstances.").

¶18        Had the supreme court intended to impose such a broad duty, it could easily have said so. Instead, in *Hutcherson*, the supreme court interpreted its own language in *Austin* much more narrowly. It stated that, under *Austin*, "[t]he City clearly had a duty to

---

[2]Although Wertheim cites and relies on only the court of appeals' opinion in *Hutcherson*, our supreme court vacated that opinion on review. Vacated cases have no precedential value. *Wetherill v. Basham*, 197 Ariz. 198, 3 P.3d 1118 (App. 2000).

act reasonably in handling emergency calls," and "[b]y creating a 911 system, it accepted the obligation of attempting to prevent the very kind of harm that occurred" in that case. 192 Ariz. at 55, 961 P.2d at 453. And it cited *De Long v. County of Erie*, 457 N.E.2d 717 (N.Y. 1983), for the proposition that the city had "owed a special duty to the victim by creating a 911 system and encouraging the public to use it." 192 Ariz. at 56, 961 P.2d at 454.

¶19    Wertheim cites *Newman v. Maricopa County*, 167 Ariz. 501, 808 P.2d 1253 (App. 1991), to support her argument that the language in *Austin* is broad enough to impose a duty in this case. We find that case unhelpful. There, the plaintiff had alleged the Maricopa County sheriff had negligently failed to protect against or warn others of a hazardous condition it had discovered on private land when it investigated a fatal accident that had occurred there. There was no allegation that the sheriff had failed to control the conduct of a third person or to protect the plaintiff from that person's actions. Moreover, the issue in *Newman* was whether the plaintiff had stated a claim upon which relief could be granted. And, although the court discussed the issue of duty, it ultimately concluded it was unable to resolve that issue because of an inadequate record. The court called the "theme" of its conclusion "prematurity, not duty" and held "only that it d[id] not appear 'beyond doubt that the plaintiff c[ould] prove no set of facts in support of his claim which would entitle him to relief.'" *Newman*, 167 Ariz. at 505-06, 808 P.2d at 1257-58, *quoting* 5A *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 1357, at

325 (1990). Therefore, although the court in *Newman* characterized the language Wertheim relies on in *Austin* as "broad," neither *Austin* nor *Newman* supports imposition of a duty on the part of TPD or PCSD under the circumstances of this case.

**¶20** Duty is "'an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection.'" *Ontiveros v. Borak*, 136 Ariz. 500, 508, 667 P.2d 200, 208 (1983), *quoting* William L. Prosser, *Handbook on the Law of Torts* § 42, at 324-27 (4th ed. 1971). "Courts traditionally '"fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability.'"" *Bloxham v. Glock Inc.*, 203 Ariz. 271, ¶ 9, 53 P.3d 196, 200 (App. 2002), *quoting Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001), *quoting Palka v. Servicemaster Mgmt. Servs. Corp.*, 634 N.E.2d 189, 193 (N.Y. 1994). We do not conclude that our supreme court, by considering these and similar factors, intended to impose a duty on law enforcement agencies consistent with Wertheim's interpretation of *Austin*. Rather, the language in *Austin* on which Wertheim relies must be interpreted within the context of that case—a member of the public's use of the 911 system and the agency's response to the information given in the call.

**¶21** Finally, Wertheim suggests that an analysis of whether a "special relationship" existed between Dillard, the defendants, and/or Carter under Restatement § 315 is

12

inappropriate under *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982). We disagree. In *Ryan*, our supreme court overruled *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969), and the line of cases that had required a determination that a government tortfeasor's general duty be narrowed to an individual duty to the injured plaintiff before liability could attach. The court in *Ryan* stated:

> We shall no longer engage in the speculative exercise of determining whether the tort-feasor has a general duty to the injured party, which spells no recovery, or if he had a specific individual duty which means recovery. *Thus, the parameters of duty owed by the state will ordinarily be coextensive with those owed by others.*

134 Ariz. at 310, 656 P.2d at 599 (emphasis added) (citations omitted). Our analysis of TPD's and PCSD's duty is not based on the principles of *Massengill* or any concept of governmental immunity. We are required by *Markowitz* to consider the relationship of the individuals involved in determining whether a duty exists. Having found no "Arizona law to the contrary," we have applied the rules and principles set forth in the Restatement that are applicable to governmental and individual defendants alike. *See Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 800 P.2d 962 (1990).

¶22     Because we conclude the City and the County owed no duty to Carter, we affirm the trial court's grant of judgment as a matter of law.

_____
M. JAN FLÓREZ, Presiding Judge

13

CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
PHILIP G. ESPINOSA, Judge