200 P.2d 342

## TOWN OF WICKENBURG v. SABIN.

### No. 5036.

Supreme Court of Arizona.

Nov. 29, 1948.

Norman Wykoff, of Wickenburg, and Snell, Wilmer, Walsh & Melczer, of Phoenix, for appellant.

Edward B. Ashurst, of Wickenburg, for appellee.

UDALL, Justice.

This appeal is from a judgment of the superior court of Maricopa County, requiring appellant, the Town of Wickenburg, a municipal corporation, under the compulsion of a peremptory writ of mandamus to forthwith furnish to appellee, Chester Sabin, electric current and water for domestic use in his home.

The facts will be stated in the light most favorable to a sustaining of the judgment. Appellant is the owner of both the municipal water and electric distribution systems, and it has an exclusive monopoly in these fields within the boundaries of the town. Appellee Sabin is an inhabitant of the town and is the owner of lot 3 in block 1 of Reed's Addition to the Wickenburg Townsite upon which he resides with his wife and two small children. This subdivision had become a part of the town some five and a half months prior to the happening of the events in question. On April 5, 1947, the appellee made application to Bernard Hill, the town clerk, for water and electric service to the tent house in which Sabin lived, tendering the usual and customary fee of $5.00 for each of such services. Irrespective of the fact that both the water distributing system and the elec-

tric lines had been previously extended by appellant into the immediate area adjacent to appellee's home in Reed's Addition, the appellee was advised by the town clerk that his application for utility services would be denied unless he put up a $50.00 deposit to guarantee the building of a permanent residence on the lot. As the appellee refused to comply with this condition, the appellant denied him both water and electric service. Immediately thereafter a mandamus action was brought by appellee to compel the town to extend to him this utility service. An alternative writ was issued and after a hearing before the court and consideration by it of the briefs submitted by the parties, it was ordered that a peremptory writ of mandamus issue ordering and directing the town to furnish the services upon payment of the usual and customary fees. This appeal by the town followed. Within ten days, however, from the date of the judgment the town complied with the order of the court, and the appellee has since been receiving continuous service. Further pertinent facts will be stated as we proceed to a consideration of specific assignments.

At the outset it seems obvious from a study of the briefs filed by the respective parties that they have very divergent theories as to the ultimate proven facts and the legal principles controlling in the case. The appellee (plaintiff) presented his whole case upon the theory of an arbitrary and unjust discrimination against him by the

appellant. It was conceded that appellant was supplying both water and electric service to a man by the name of Chapman who was living in a similar tent house on an adjacent lot, and that no deposit other than the customary fees had been paid by him. However the appellant stoutly maintained that the action taken which resulted in the installation of service to Chapman had been without the approval of the town council. The town admittedly had an abundant supply of water and sufficient electric power to supply the needs of all within its limits. Furthermore, the evidence offered by the appellee, if believed, established that to connect his home with the water line serving the Chapman place would require approximately two hours of labor and not to exceed 100 feet of three-quarter inch pipe. Other testimony would also establish that it would only require some four hours of labor, one pole, and 600 feet of wire to connect appellee's home with the existing power line serving his neighbor Chapman. The town clerk admitted from the witness stand that there had been no official ordinance or resolution enacted or passed requiring the collection of a $50.00 deposit or the giving of a bond to insure the construction of permanent buildings, nor had any such deposit or bond been exacted of any other user of water or electric current in the town of Wickenburg. Clerk Hill further testified:

"The Court: The reason for the refusal of water and electric service to this man Sabin was due to the fact that he had a tent house rather than what you considered to be a permanent dwelling, is that right?

"Answer: Yes."

The law on discrimination as applied to public service corporations generally is well settled. McQuillin Municipal Corporations, 2d Ed., Vol. 4, section 1829, states:

"The rule forbidding unjust discrimination has been variously expressed: The charges must be equal to all for the same service under like circumstances. A public service corporation is impressed with the obligation of furnishing its service to each patron at the same price it makes to every other patron for the same or substantially the same or similar service. It 'must be equal in its dealings with all.' It 'must treat the members of the general public alike.' All patrons of the same class are entitled to the same service on equal terms. 'The law will not and cannot tolerate discrimination in the charges of these quasi-public corporations. There must be equality of rights to all and special privileges to none.' 'A person having a public duty to discharge is undoubtedly bound to exercise such office for the equal benefit of all.' 'All should be treated alike; equality of rights requires equality of service.' 'The duty owed to all alike involves obligations to treat all alike.' 'The common law upon the subject is founded on public policy which requires one engaged in a public calling to charge a reasonable and

uniform price to all persons for the same service rendered under the same circumstances.' "

For other text statements of the same tenor, see 29 C.J.S., Electricity, § 27; 43 Am.Jur., Public Utilities and Services, sec. 42; Water Rights in the Western States (Wiel), 3d Ed., Vol. 2, sec. 1283. For only two of the many cases on discrimination, see Texas Power & Light Co. v. Kousal, Tex.Civ.App.1943, 170 S.W.2d 278; Southeastern Land Co. v. Louisville Gas & Electric Co., 262 Ky. 215, 90 S.W.2d 1.

As regards discrimination in the public utility field, the appellant, a municipal corporation, stands in the same position as a private corporation.

" * * * And a municipality undertaking to supply water to its inhabitants stands in no different relation as to the right to discriminate from that of private corporations. * * * 27 R.C.L., Waterworks, sec. 66. See also 29 C.J.S., Electricity, § 27; McQuillin Municipal Corporations, 2d Ed., Vol. 4, sec. 1837; American Aniline Products, Inc., v. City of Lock Haven, 288 Pa. 420, 135 A. 726, 50 A.L.R. 121, Annotation page 126.

■ The rule applicable to deposits and guaranties for payment of future service is well stated in 43 Am.Jur., Public Utilities and Services, sec. 44:

"Deposits and Guaranties.—A requirement by a public service corporation that its patrons furnish a deposit or a guaranty as security for payment of future service has been held to be improper discrimination, where it is enforced against some, but not against all, of its patrons."

See also Fair v. Home Gas and Electric Co., 15 Cal.App. 705, 115 P. 754. By analogy we believe this rule also applies to the discriminatory exaction here attempted.

■ If appellee's claim of discrimination is sound, there can be no doubt but what mandamus was the proper remedy. 56 Am.Jur., Waterworks, sec. 59; Water Rights in the Western States (Wiel), 3d Ed., Vol. 2, sec. 1280; Salisbury & S. R. Co. v. Southern Power Co., 179 N.C. 18, 101 S.E. 593, 12 A.L.R. 304.

The appellant on the other hand takes the position that the ultimate facts establish that to supply the appellee with utility services involved major and expensive extensions. The testimony of appellant's witnesses was to the effect that the power line serving Chapman was not up to standard, the voltage was low, and that to render adequate service to appellee's small tent house would require the rebuilding of two spans of secondary and one span of primary line, the installation of poles and a transformer, at an overall cost of from $250 to $275. Their testimony was that it would not be practicable or feasible to run a temporary line from the Chapman property to the property owned by appellee. It developed, however, at the trial that appel-

lee, with Chapman's consent, had made an unauthorized electrical connection with the town lines to the apparent satisfaction of both of them. The appellant learned of it, however, and cut him off. As to the water connection the appellant's contention is even more fantastic. A town councilman, after stating that the appellant had lost some $6000 on its water operations for the previous year, testified that in order to adequately serve the humble dwelling of the appellee for domestic needs and furnish the necessary fire protection it would be necessary to lay from one to two thousand feet of four inch pipe at a cost of from $2.50 to $3.00 per lineal foot, or a capital expenditure of at least $2500. With this backdrop appellant contends that the trial court erred in entering judgment directing issuance of a peremptory writ of mandamus against it for the following reasons: (1) that the municipality may lawfully refuse extensions of its utility services where the probable revenues to be derived therefrom would not justify the expense involved in making such extensions; (2) that appellee had failed to pay or tender to appellant the $20 meter deposit required as a condition precedent to establishing water service; (3) that the requirement of a $50.00 deposit prior to installing service was reasonable and fair and such as appellant might lawfully demand before making the large investment required; (4) that extensions might only be made by an affirmative vote and author-ization of the Town Council and that such action had not been taken in the instant case; (5) that appellant's refusal to render this type of service was in line with the town's policy in such matters and accordingly within the lawful discretion of the town council, and was not subject to review by the court, particularly where reasonable men might differ as to the wisdom of the decision made and the policy adopted.

It is obvious that the contentions numbered (1), (3), (4) and (5), supra, are predicated upon the assumption that granting utility services to appellee involved an extension of services into an entirely new territory within the town limits. If such were in fact the only conclusion to be drawn from the evidence in the case, the action of appellant in rejecting service to appellee might well be justified, for there is very respectable authority to the effect that a municipality, as distinguished from a private utility corporation, may exercise a governmental discretion as to the limits to which it is advisable to extend its water mains and power lines, and an extension will not be compelled by the courts at the instance of an inhabitant. 43 Am. Jur., Public Utilities and Services, sections 47 and 48; City of Greenwood v. Provine, 143 Miss. 42, 108 So. 284, 45 A.L.R. 824, Annotation page 829. However we do not want to be understood as passing upon this point, for as we view it, such a ruling is not necessary to a determination of the instant suit.

As to the appellee's failure to make the $20.00 meter deposit assignment (2), the trial court may well have concluded from the evidence that this water meter charge was not effective as of the date (April 5, 1947) of appellee's application for service. In fact Town Clerk Hill admitted that through an error letters had gone out to all its utility patrons advising them that such charge was not due until May 1, 1947. It further appears that the refusal to grant service to appellee was not based upon the latter's failure to comply with this requirement as no demand for said meter deposit was made of him.

■ While the trial court made no findings of fact, the conclusion, from the judgment entered, is inescapable that the learned trial court found, and we believe there is ample evidence to sustain such findings, that (1) appellee's premises were within an established "service zone", that to grant him the utility services applied for merely involved the making of an ordinary service connection with existing lines, and that such action did not require the formal authorization of the town council; (2) that appellee had suffered an arbitrary and unjust discrimination at the hands of the appellant, acting through its regularly constituted officers, by the attempted exaction of the $50.00 deposit or bond not required of others, and the refusal, unless this requirement was met, to grant to him the utility services accorded his neighbors.

■ In the case of Grimm v. Beard, 63 Ariz. 281, 161 P.2d 924, 926, this court laid down the rule which governs here. We quote:

" * * * We think it proper to add that, in the absence of findings, this court is bound to uphold a judgment * * * where there is a reasonable theory of the case upon which the judgment can be sustained, and there is sufficient evidence in its support. Phoenix Safety Investment Co. v. James, 28 Ariz. 514, 237 P. 958; In re Estate of Brashear, 54 Ariz. 430, 96 P.2d 747. * * *" See also Perkins v. First Nat. Bk. of Holbrook, 47 Ariz. 376, 56 P. 2d 639.

In closing, it should be noted that the judgment entered by the trial court did not expressly direct any particular type of construction, but only required that the services be rendered.

No error appearing in the record, the judgment is affirmed.

STANFORD, C.J., and LaPRADE, J., concurring.