238 P.3d 149

FRED NACKARD LAND COMPANY; LNN Enterprises, Inc.; Richard Henderson; West Village Estates, Inc., and all others similarly situated, Plaintiffs/Appellants,

v.

CITY OF FLAGSTAFF, a municipal corporation, Defendant/Appellee.

No. 1 CA–CV 08–0533.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 2, 2010.

Aspey, Watkins & Diesel, P.L.L.C. By Harold L. Watkins, Donald H. Bayles, Jr., Carson T.H. Emmons, Flagstaff, Attorneys for Plaintiffs/Appellants.

Graif Barrett & Matura, P.C. By Erin E. Byrnes, Phoenix, Co–Counsel for Defendant/Appellee.

Jones, Skelton & Hochuli, P.L.C. By Gordon Lewis, Phoenix, Co–Counsel for Defendant/Appellee.

## OPINION

SWANN, Judge.

¶ 1 The issue in this case is whether the ordinances that establish a charge-and-credit system to fund the City of Flagstaff's stormwater management utility are constitutional. Applying the rational basis test to Plaintiffs' state law equal protection challenge, we hold that the ordinances are facially valid. We conclude, however, that Plaintiffs have presented sufficient evidence to preclude summary judgment on their claim that the ordinances have been applied in an unconstitutionally discriminatory manner. We further hold that the right to equal charges guaranteed by Ariz. Const. Art. 15, § 12 does not apply, explicitly or implicitly, to fees charged by municipal corporations. Finally, because Arizona law contains no analogue to 42 U.S.C. § 1983, Plaintiffs have not established on this record that they are entitled to recover damages on their state constitutional challenge to the application of the ordinances.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In 2001, the City enacted ordinances adopting floodplain management regulations and a stormwater management design manual. The design manual required the installation of stormwater detention structures for new subdivisions, commercial and industrial developments, re-developments of non-conforming sites, and other developments over a quarter-acre in size. Another ordinance established a City-owned and -operated stormwater management utility, which was to construct and manage stormwater drainage systems. The utility, according to the ordinance, would be funded by service and system development fees, which could be off-

set by credits to property owners who took measures to reduce the burden on the utility. In March 2003, the City enacted Ordinance 2003–02, which established a charge schedule.

¶ 3 In October 2003, Plaintiffs submitted a notice of claim to the City as putative members of a class pursuant to A.R.S. § 12–821.01. Plaintiffs asserted that, pursuant to the design manual, they had installed detention structures on their properties, but their fees had not been reduced by credits. At that time, though Ordinance 2003–02 provided that credits were available for detention structures, a credit manual had not yet been adopted. Plaintiffs also alleged that while they had been subject to charges, no charges had been imposed on owners of undeveloped property. They claimed that the City had violated their equal protection and due process rights under both the United States and Arizona Constitutions, and had also violated Ariz. Const. Art. 15, § 12. Plaintiffs further claimed that the charges constituted an unlawful tax, and offered to settle their claim for $100,000,000.

¶ 4 Plaintiffs filed their complaint in superior court in June 2004. The parties stipulated to class certification, and the court certified a class comprised of "all owners of real property in the City of Flagstaff who were required (or whose predecessor's [sic] in interest were required) by the City of Flagstaff to construct stormwater detention systems and are now being charged a stormwater runoff fee."

¶ 5 In January 2007, Plaintiffs filed an amended complaint, adding allegations that Ordinances 2004–22 and 2006–17 violated the equal protection guarantee of the Arizona Constitution.[1] Ordinance 2004–22 had adopted a retroactively effective interim credit manual for the utility, and Ordinance 2006–17 had revised the manual in response to a fee increase implemented by another ordinance. Plaintiffs sought a declaration that Ordinances 2003–02, 2004–22, and 2006–17 were unconstitutional. They also de-

1. Plaintiffs nominally challenged Ordinances 2004–17 on both equal protection and due process grounds, but their allegations

and citations to the Arizona Constitution implicated only the equal protection guarantee.

manded compensatory damages based solely on claimed violations of the Arizona Constitution.[2]

¶ 6 Both parties moved for summary judgment. After oral argument, the court granted the City's motion and denied Plaintiffs' motion. The court concluded that Plaintiffs' notice of claim was deficient under A.R.S. § 12–821.01, and that the challenged ordinances were constitutional. The court explained that because neither a suspect class nor a fundamental right was involved, the rational basis test governed and the ordinances passed that low level of scrutiny.

¶ 7 Plaintiffs filed a 52–page motion for new trial, arguing for the first time that the City had applied its charge schedule in an unconstitutional manner. The court denied the motion, and dismissed the action with prejudice as to the named Plaintiffs, but without prejudice as to the class. Plaintiffs timely appeal the court's rulings. We have jurisdiction over this appeal pursuant to Ariz. Const. Art. 6, § 9, and A.R.S. § 12–2101(A) and (F)(1) (2003).

## DISCUSSION

¶ 8 We review challenges to the constitutionality of legislation *de novo*. *E.g., Bertleson v. Sacks Tierney, P.A.,* 204 Ariz. 124, 126, ¶ 6, 60 P.3d 703, 705 (App.2002). We presume constitutionality, and "will not declare a statute unconstitutional unless we are 'satisfied beyond a reasonable doubt' that it conflicts with the federal or state constitutions." *Id.* (quoting *Chevron Chem. Co. v. Superior Court,* 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982)). We will, whenever possible, construe a statute or ordinance so as to find it constitutional. *E.g., Jilly v. Rayes,* 221 Ariz. 40, 42, ¶ 4, 209 P.3d 176, 178 (App. 2009).

¶ 9 Plaintiffs' arguments on appeal are based solely on equal protection.[3] First,

they argue that under the utility's charge-and-credit system, properties that similarly burden the utility are required to pay different net amounts. Second, they argue that the City failed to bill all properties that are required to be billed. For its part, the City contends that Plaintiffs' notice of claim was defective because it failed to set forth a sum certain for which the claims could be settled.

## I. PLAINTIFFS' CLAIMS FOR DECLARATORY RELIEF WERE NOT SUBJECT TO THE NOTICE OF CLAIM REQUIREMENT, AND THE CITY WAIVED ITS OBJECTIONS CONCERNING PLAINTIFFS' CLAIMS FOR DAMAGES.

¶ 10 The City contends that Plaintiffs' notice of claim was defective because it failed to state a sum certain for which the putative class representatives would settle, stated an indefinite alternative settlement formula, and failed to state adequate facts to support the claim. We reject these arguments.

¶ 11 First, in *Martineau v. Maricopa County,* 207 Ariz. 332, 86 P.3d 912 (App. 2004), we held that the notice of claim statute does not apply to claims for declaratory relief. 207 Ariz. at 337, ¶ 24, 86 P.3d at 917. *See also Home Builders Ass'n of Cent. Ariz. v. Kard,* 219 Ariz. 374, 381, ¶ 31, 199 P.3d 629, 636 (App.2008); *State v. Mabery Ranch Co.,* 216 Ariz. 233, 245, ¶ 52, 165 P.3d 211, 223 (App.2007). *Martineau* recognized that the language and policies of the notice of claim statute are inconsistent with claims for declaratory relief. 207 Ariz. at 335–36, ¶¶ 19–21, 86 P.3d at 915–16. The notice of claim statute is designed to allow public entities to investigate and assess liability, to permit the possibility of pre-litigation settlement, and to assist public entities in financial planning and budgeting. *Id.* at ¶ 19. *Martineau* noted that a "claim for declaratory relief does not seek damages and would not result in any

---

**2.** Though Plaintiffs cited the United States Constitution in their notice of claim, they did not pursue federal constitutional claims in their original or amended complaints. Because the trial court granted summary judgment in favor of the City on the merits of Plaintiffs' constitutional claims, it did not have occasion to consider the viability of the damage remedy that Plaintiffs

sought. We address the issue *infra* in Section V. of this opinion.

**3.** Plaintiffs' briefs did not urge their due process and takings clause challenges. We therefore deem those arguments abandoned. *DeElena v. S. Pac. Co.,* 121 Ariz. 563, 572, 592 P.2d 759, 768 (1979) (citing ARCAP 13(a)(6)).

monetary award against [a public entity] even if successful ... and therefore would have no direct effect on [the entity's] financial planning or budgeting." *Id.* at 336, ¶ 20, 86 P.3d at 916.

■ ¶ 12 The City contends that declaratory relief for Plaintiffs would have a "direct effect" on the City's financial planning and budgeting because, were the challenged ordinances declared unconstitutional, the City would have to reassess its planning and budgeting in stormwater management and other areas. But *Martineau* clearly held that a "direct effect" implicated by § 12–821.01 is one caused by a monetary award, not declaratory relief. Declaratory relief may naturally require public entities to reassess their future financial planning in some cases, but that consequence of declaratory relief is not the functional equivalent of a judgment requiring payment of a monetary award for past damages. We therefore hold that Plaintiffs' claims for declaratory relief were not subject to the notice of claim requirement.

■ ¶ 13 Plaintiffs do not dispute that their claims for damages were subject to the notice of claim requirement, but argue that the City waived any objections to its compliance by failing to raise the issue until it had actively litigated the case for years. We agree. When a government entity substantially litigates the merits of a case without seeking dismissal for a defective notice of claim, it waives that affirmative defense even though it may not intend to do so. *See City of Phoenix v. Fields,* 219 Ariz. 568, 574, ¶ 29, 201 P.3d 529, 535 (2009) ("Even when a party preserves an affirmative defense in an answer or a Rule 12(b) motion, however, it may waive that defense by its subsequent conduct in the litigation.... This rule applies to the notice of claim statute defense." (citation omitted)); *County of La Paz v. Yakima Compost Co.,* 224 Ariz. 590, 597, ¶ 8, 233 P.3d 1169, 1176 (App.2010). Here, there is no genuine dispute that the City permitted an amendment of the complaint, participated in trial management conferences and actively pursued discovery and disclosure for more than three years before seeking a ruling on

the validity of the notice of claim. We conclude as a matter of law that the City has waived any notice of claim objection to Plaintiffs' claims for damages.[4]

## II. THE CHARGE–AND–CREDIT SYSTEM DOES NOT VIOLATE THE EQUAL PROTECTION GUARANTEE.

¶ 14 The stormwater management utility's charge-and-credit system, established by the challenged ordinances, determines the net amount an owner of property is required to pay to the utility. Charges are imposed based on the number of equivalent rate units ("ERUs") attributable to a property. An ERU is a direct function of a property's impervious area. Impervious area "include[s], but is not necessarily limited to, any man-made structure or surface that is built or laid upon the natural surface of the land which has the effect of increasing, collecting, concentrating, re-directing, or otherwise altering stormwater runoff from land in a manner that increases peak stormwater runoff rates, the total volume of stormwater discharged from a property, or the pollutant loading contained in stormwater runoff."

¶ 15 Credits against charges are awarded for certain runoff mitigation measures, including the installation of detention structures and rainwater barrels. Detention structures are awarded a 9% credit if built before the year 2000, and a 19.5% credit if built after 2000. Rainwater barrels under residential downspouts are awarded a 10% credit.

¶ 16 The charge-and-credit system therefore requires owners to pay different amounts to support the utility depending on the characteristics of their properties and the mitigation measures adopted. Plaintiffs complain that the disparate treatment is unconstitutional because it is unrelated to the relative burdens that the properties impose on the utility.

### A. *The Rational Basis Test Applies.*

■ ¶ 17 Municipal ordinances are presumed constitutional, *see State v. Kaiser,* 204

---

**4.** Because the defense is waived, we express no opinion on its merit.

Ariz. 514, 517, ¶ 8, 65 P.3d 463, 466 (App. 2003), and do not necessarily violate equal protection merely because they treat similarly situated classes differently. *Big D Constr. Corp. v. Court of Appeals*, 163 Ariz. 560, 565, 789 P.2d 1061, 1066 (1990). When an ordinance affects a suspect class or a fundamental right, the strict scrutiny test applies, and the ordinance will be upheld only if it is "necessary to promote a compelling state interest." *Id.* at 566, 789 P.2d at 1066. When an ordinance affects neither a suspect class nor a fundamental right, however, the rational basis test applies, and the ordinance will be upheld so long as it is "rationally and reasonably related to furthering some legitimate government interest." *Id.*

¶ 18 The strict scrutiny test would apply in this case only if a fundamental right were affected by the challenged ordinances.[5] The Arizona Constitution may create a fundamental right either explicitly or implicitly. *See Kenyon v. Hammer*, 142 Ariz. 69, 79, 688 P.2d 961, 971 (1984). Plaintiffs contend that the explicit right against rate discrimination by *public service corporations* guaranteed by Ariz. Const. Art. 15, § 12 (which we agree is fundamental) is implicated by the challenged ordinances. We conclude, however, that the provision does not apply to this case, and the implicit right urged by Plaintiffs does not exist.

1. Ariz. Const. Art. 15, § 12 Does Not Apply to Municipal Corporations.

¶ 19 Plaintiffs contend that Art. 15 of the Arizona Constitution creates a fundamental right to equal charges for utility services such as stormwater management, and that a strict level of scrutiny should apply. Art. 15 establishes the Arizona Corporation Commission, which regulates public service corporations. Ariz. Const. art. 15, § 3. "Public service corporations" are defined in Art. 15, § 2 as "[a]ll corporations *other than municipal* engaged in furnishing [various services]."[6] (Emphasis added.)

¶ 20 Art. 15, § 12 provides: "All charges made for service rendered, or to be rendered, *by public service corporations* within this State shall be just and reasonable, and no discrimination in charges, service, or facilities shall be made between persons or places for rendering a like and contemporaneous service...." (Emphasis added.) Because Art. 15, § 12 is by its plain terms limited to "public service corporations," and municipal corporations are explicitly excluded from the definition of "public service corporations" by Art. 15, § 2, we conclude that the explicit right guaranteed by Art. 15, § 12 does not apply against the City. *See City of Phoenix v. Wright*, 52 Ariz. 227, 230, 80 P.2d 390, 391 (1938).

2. No Implicit Right Under Ariz. Const. Art. 15, § 12 Applies Against Municipal Corporations.

¶ 21 Relying principally on *Town of Wickenburg v. Sabin*, 68 Ariz. 75, 200 P.2d 342 (1948), Plaintiffs argue that the Arizona Supreme Court has long recognized an implicit constitutional right under Art. 15, § 12 when a municipal corporation provides utility services. Plaintiffs' reliance on *Sabin* is misplaced.

¶ 22 In *Sabin*, the Town of Wickenburg, a municipal corporation, held an exclusive monopoly on water and electric distribution systems within the town limits. 68 Ariz. at 76, 200 P.2d at 342. Sabin lived in a "tent house" in a subdivision that had recently become part of the town. *Id.* He applied to the town clerk for water and electric services and paid the $5 fee for each service, but was told that his application would be denied unless he tendered a $50 deposit to guarantee that he would build a permanent residence on his property. *Id.* at 76, 200 P.2d at 342–43. Sabin refused to pay the deposit, and his application was denied. *Id.* at 76, 200 P.2d at 343. It was undisputed that the Town provided water and electric services for the customary $5 fee to an individual living in a tent house on the lot next to

---

5. Plaintiffs do not contend that they are members of a suspect class.

6. Since statehood, the Arizona Constitution has expressly exempted municipal corporations from

Art. 15, and has specifically limited Art. 15, § 12 to "public service corporations." *The Records of the Arizona Constitutional Convention of 1910*, at 1431, 1433 (John S. Goff ed., 1991).

Sabin's, yet the town clerk admitted that Sabin was denied services because he lived in a tent house. *Id.* at 77, 200 P.2d at 343. The superior court compelled the Town to furnish Sabin with water and electric services, and the Arizona Supreme Court affirmed. *Id.* at 76, 80, 200 P.2d at 342, 345.

¶ 23 The court (relying extensively on McQuillin's *Municipal Corporations* § 1829 (2d ed.1943)) noted the well-settled state of the law generally prohibiting discrimination by public service corporations. *Id.* at 77, 200 P.2d at 343. The court quoted McQuillin for the following proposition: "The charges must be equal to all for the same service under like circumstances. A public service corporation is impressed with the obligation of furnishing its service to each patron at the same price it makes to every other patron for the same ... or similar service." *Id.* (quoting McQuillin, § 1829). The court then held: "As regards discrimination in the public utility field, the [Town], a municipal corporation, stands in the same position as a private corporation." *Id.* at 78, 200 P.2d at 344. The court determined that there was ample evidence that Sabin's property was within an established "service zone," and that the Town arbitrarily and unjustly discriminated against Sabin by demanding that he pay a deposit not required of others within the zone before it would provide services to his property. *Id.* at 80, 200 P.2d at 345. Plaintiffs read this holding as bringing municipalities within the scope of Art. 15. We disagree.

¶ 24 The issue in *Sabin* was not whether a utility customer had a fundamental constitutional right to a nondiscriminatory rate under Art. 15, § 12. Indeed, *Sabin* did not even cite Art. 15. Rather, the issue was whether the Town had arbitrarily discriminated against a single property owner or whether the increased fee it wished to charge was justified by a purported need to expand its infrastructure to expand the service. The court rejected as "fantastic" the Town's contention that it had a reasonable justification for the different rate that it charged Sabin, and therefore concluded that the discriminatory rate was unlawful.

¶ 25 We do not read *Sabin* as recognizing a fundamental right under the constitution or common law. To the contrary, *Sabin* rests on a factual determination that the Town's decision was purely arbitrary. No strict scrutiny or constitutional analysis was required or applied to reach the result in that case—indeed, the court's analysis closely resembled modern rational basis review. We recognize that *Sabin* held that, in some circumstances, "a municipal corporation stands in the same position as a private corporation." 68 Ariz. at 78, 200 P.2d at 344. But we reject the invitation to read that holding as conflating the character of public and private enterprises for all purposes in the area of utility services. Plaintiffs' reading would do violence to the plain language of Art. 15, § 3, and it would ignore the *Sabin* court's own recognition that "a municipality, *as distinguished from a private utility corporation*, may exercise a governmental discretion as to the limits to which it is advisable to extend its water mains and power lines, and an extension will not be compelled by the courts at the instance of an inhabitant." 68 Ariz. at 79, 200 P.2d at 345 (emphasis added).

¶ 26 Five years after *Sabin*, the Arizona Supreme Court held: "It is well established in this jurisdiction that municipal corporations may engage in the occupations referred to in Section 2 of Article 15 of the Constitution of Arizona, and that while thus acting they are not 'public service corporations' within the meaning of the constitution." *Rubenstein Constr. Co. v. Salt River Project Agric. Improvement & Power Dist.*, 76 Ariz. 402, 404, 265 P.2d 455, 456 (1953). We conclude, therefore, that the supreme court has never recognized an implicit fundamental right that supports Plaintiffs' claims. We likewise decline to do so, and conclude that the appropriate level of constitutional scrutiny in this case is that prescribed by the rational basis test.

B. *The Charge-and-credit System Survives Rational Basis Review.*

¶ 27 As we noted above, an ordinance will be upheld under the rational basis test so long as it is "rationally and reasonably related to furthering some legitimate government interest." *Big D Constr. Corp.*, 163 Ariz. at 566, 789 P.2d at 1067. Under

that standard, "[a] perfect fit is not required; a[n] [ordinance] that has a rational basis will not be overturned merely because it is not made with mathematical nicety, or because in practice it results in some inequality." *Id.* (internal quotation marks omitted). To determine whether the rational basis test is satisfied, therefore, we must ascertain (1) whether the challenged ordinances serve a legitimate purpose, and (2) whether the classification drawn in the ordinances rationally furthers that purpose. *Kenyon,* 142 Ariz. at 78, 688 P.2d at 970.

¶ 28 Our analysis is not limited to the actual purpose of the ordinances, and we do not require proof of the legislative considerations that actually gave rise to the ordinances. If we can conceive of a rational basis for the classification, the test is satisfied. *Lerma v. Keck,* 186 Ariz. 228, 233, 921 P.2d 28, 33 (App.1996). A classification will be found *not* to rationally further an ordinance's purpose "only if the classification rests on grounds wholly irrelevant to the achievement of [the purpose]." *Kenyon,* 142 Ariz. at 78, 688 P.2d at 970 (quoting *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)). "[T]he courts accept the legislative determination of relevancy so long as it is reasonable, even though it may be disputed, debatable or opposed by strong contrary arguments." *Id.*

¶ 29 We begin the analysis with the presumption that the rational basis test is satisfied. *Lerma,* 186 Ariz. at 233, 921 P.2d at 33. That presumption can be overcome only by clear evidence of arbitrariness or irrationality, and the burden of proof rests on the party challenging the constitutionality of the law. *Id.; Uhlmann v. Wren,* 97 Ariz. 366, 388, 401 P.2d 113, 128 (1965). Plaintiffs have not met that burden. Plaintiffs relied on expert opinion evidence concerning the fairness of the system, but such opinions prove only that the policies of the system are fairly debatable—not that the system's classifications lack a rational basis.

¶ 30 Here, the undisputed purpose of the utility is to manage stormwater runoff. The creation and funding of the utility are legitimate legislative goals. We conclude that the classifications drawn by the charge-and-credit system, though perhaps not crafted with ideal precision, rationally further that purpose.

¶ 31 Charges are imposed based on a property's impervious area, which by definition is area that has an increased impact on stormwater runoff and therefore imposes an increased burden on the utility. Properties that burden the utility more are therefore charged more. Credits are awarded for activities that reduce the burden on the utility and allow for rainwater recycling. The credits therefore provide incentives for property owners to engage in activities that the legislative body considers desirable.

¶ 32 Plaintiffs rely heavily on evidence that could demonstrate inequities between the extent to which properties actually burden the utility and the amount property owners are required to pay. For example, Plaintiffs contend that the credit system is unfair because (1) landowners who eliminate their runoff contribution to the stormwater system are still required to pay significant charges, (2) residential properties do not face the same charges as commercial properties despite the fact that they may present identical burdens to the system, and (3) mitigation measures with comparatively modest effect, such as rainwater barrels, are granted disproportionately high credits.

¶ 33 We do not doubt that the fit between the burdens properties create and the charges they face under the ordinances is highly imperfect. But the algorithms that determine specific amounts of charges and credits are policy decisions that reflect legislative judgments concerning the relative values of different types of activities. *See, e.g., Third & Catalina Assocs. v. City of Phoenix,* 182 Ariz. 203, 209–10, 895 P.2d 115, 121–22 (App.1994) (finding no equal protection violation in ordinance exempting residential properties from retrofitting requirement and noting that "underinclusiveness does not violate the equal protection clause"); *Home Builders Ass'n of Cent. Arizona, Inc. v. City of Scottsdale,* 116 Ariz. 340, 342, 569 P.2d 282, 284 (App.1977) (upholding against equal protection challenge municipal water charges for

future building permits that did not apply to existing users).

¶ 34 Here, the classifications the ordinances draw can be rationally tied to legitimate legislative objectives. Though not all properties burden the utility equally, all benefit from its services. The decision to charge developed land but not undeveloped land is supported by evidence concerning the comparative likelihood that developed property will contribute to the velocity and pollution content of stormwater runoff. Objections to the substance and the fairness of such policy decisions are properly directed to the legislative branch—under rational basis review, even debatable classifications will pass muster. We conclude, therefore, that there is a rational basis for the charge-and-credit system and that the superior court did not err in granting summary judgment for the City concerning the facial validity of the challenged ordinances.

### III. THE CHARGE–AND–CREDIT SYSTEM IS NOT AN "UNLAWFUL TAX."

■ ¶ 35 Plaintiffs contend that the stormwater management utility imposes a tax, not a fee as the City claims. They argue that because the stormwater utility is intended to benefit the community generally, the utility fee is "actually a tax masquerading as a fee to avoid the legal requirements for the imposition of a lawful tax." We disagree. In *Stop Exploiting Taxpayers v. Jones*, this court recognized the general rule that rates charged for city-owned utilities ordinarily are not taxes. 211 Ariz. 576, 579, ¶ 13, 125 P.3d 396, 399 (App.2005) ("[U]tility rates are not taxes even if some of the proceeds transferred to the general fund are used for other governmental programs." (citing, *inter alia,* 12 Eugene McQuillin, *The Law of Municipal Corporations* § 35:38 (3d rev. ed.1999))). We therefore conclude that the restrictions governing taxation do not apply to the fees at issue.

### IV. THE CITY'S FAILURE TO COLLECT FEES FROM PROPERTIES LACKING WATER METERS MAY AMOUNT TO AN UNCONSTITUTIONAL APPLICATION OF ITS ORDINANCES.

¶ 36 Ordinance 2003–02 provides that all properties that incur charges shall be billed, regardless of the presence or absence of a City water meter. Under the ordinance, stormwater management utility charges must be added to the water bills for properties connected to the City's water utility, and separate bills must be issued for other properties.[7] Nonetheless, it is undisputed that only properties with City water meters have received bills. Plaintiffs contend that because the City has enforced the ordinances based upon a classification that is neither embodied in the ordinances nor supported by a rational relationship to a legitimate legislative goal, it has violated the equal protection guarantee. We agree that the evidence could support such a conclusion.

■ ¶ 37 As a threshold matter, the City contends that because this "as applied" challenge was first raised in the motion for new trial, the argument is waived. We disagree. Though arguments raised for the first time in a motion for new trial are generally not subject to appellate review, we have considered such arguments in limited circumstances. *See, e.g., Parra v. Cont'l Tire N. Am., Inc.,* 222 Ariz. 212, 214 n. 2, ¶ 7, 213 P.3d 361, 363 n. 2 (App.2009) ("On appeal, defendants argue we should not consider any new arguments plaintiffs made in their motion for new trial. Because plaintiffs appealed from the denial of their new trial motion, however, those arguments properly are before us."). Here, the motion for new trial was not presented after a trial, but after a ruling on summary judgment. The court received the benefit of a full adversary presentation on a complete record, and Plaintiffs have appealed from its ruling on the motion for new trial. In these circumstances, we

---

**7.** The ordinance provides, in pertinent part: "Stormwater management utility services charges shall be added to and collected with the bills as rendered for water.... For those proper- ties not utilizing the City's water utility, a separate bill shall be collected from the property owner of record."

may consider Plaintiffs' legal argument properly presented for review.

¶ 38 Though it is undisputed that the City failed to bill all eligible property owners according to its own ordinance, that fact alone is not enough to create an equal protection violation. In *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944), the United States Supreme Court held that "[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." The Court observed that purposeful discrimination may be evidenced in one of two ways: it "may appear on the face of the action taken with respect to a particular class or person, or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself." *Id.* (citation omitted). Regarding the latter, the Court further explained that "a discriminatory purpose is not presumed; there must be a showing of 'clear and intentional discrimination.'" *Id.* (*citation omitted*). The Court observed that such a showing may be established by systematic practices such that "the practical effect of the official breach of law is the same as though the discrimination were incorporated in and proclaimed by the statute," *id.* at 9, 64 S.Ct. 397, but also noted that systematic and continuous practices are not required to make the showing. *Id.* at 9–10, 64 S.Ct. 397.

¶ 39 When there is evidence demonstrating that a facially neutral enactment has been applied in a purposefully discriminatory fashion, the equal protection analysis must proceed as if the law itself were discriminatory, the constitutionality of which must then be assessed by application of the appropriate level of scrutiny. *See Aida Renta Trust v. Ariz. Dep't of Revenue,* 197 Ariz. 222, 236–37, ¶ 44–46, 3 P.3d 1142, 1156–57 (App.2000). Therefore, the preliminary inquiry is whether Plaintiffs have proven that a genuine governmental classification exists despite the facially neutral language of Ordinance 2003–02,

either because a purposeful discrimination appears on the face of the City's actions in issuing bills, or because purposeful discrimination may be shown by extrinsic evidence.

¶ 40 Plaintiffs contend that despite the facially neutral language of the ordinance, only properties with City water meters were issued bills, from the stormwater management utility's inception and for many years thereafter. The City acknowledges the truth of that assertion, but argues that the record contains no evidence that any properties without City water meters contain impervious area and therefore should have been issued bills.

¶ 41 The testimony of Malcolm Alter, the City's Stormwater Manager, contradicts the City's argument and reveals evidence of two critical facts: the City has never made an effort to bill owners of properties that lack water meters, and that decision may have been a purposeful policy decision. When asked to explain the City's practice of billing only properties with City water meters, Alter explained his statement in an earlier affidavit that "[i]n implementing the fee, the Council recognized that, pragmatically speaking, the best way in which to charge such a fee was by billing it in conjunction with a party's water bill." Alter also testified that in some circumstances, properties with impervious area but without City water meters could contribute to pollution in stormwater runoff. From this testimony, a finder of fact could infer that the City has made a purposeful policy decision to enforce its own law based on the presence or absence of a water meter, despite its own legislative determination that properties with impervious areas that lack water meters should be billed.

¶ 42 We express no opinion concerning the validity of Plaintiffs' assertion that properties exist that should have been billed, or the City's ability to demonstrate that such a classification could pass muster under the rational basis test. But on this record, we cannot hold that summary judgment was appropriate. We therefore remand this case for further proceedings concerning Plaintiffs' "as applied" challenge.

*V. ARIZONA HAS NOT YET RECOG-
NIZED A DAMAGE REMEDY FOR
STATE CONSTITUTIONAL VIOLA-
TIONS.*

¶ 43 Because we conclude that one of Plaintiffs' state constitutional claims may have merit, we are compelled to reach the issue of potential damages. This case alleges only violations of the Arizona Constitution. No claim for relief pursuant to 42 U.S.C. § 1983 for violation of the equal protection guarantee contained in the federal constitution appears in the original or amended complaint. Though the parties appear to have proceeded in the trial court on the belief that a damage remedy like that created by § 1983 exists for state constitutional violations, we find no legal basis for such relief. Accordingly, we alerted the parties to this issue before oral argument, and sought supplemental authority on the question.[8]

¶ 44 In support of their contention that damages are allowed, Plaintiffs rely on *Corrigan v. City of Scottsdale*, 149 Ariz. 538, 720 P.2d 513 (1986). We find that reliance misplaced. *Corrigan* held that damages could be awarded after a landowner successfully argued that a zoning ordinance was unconstitutional and amounted to a taking of property without just compensation. *Id.* at 543, 720 P.2d at 518. But the Arizona Constitution specifically provides for compensation in cases involving takings of property, and *Corrigan* nowhere held or implied that a general damage remedy for violations of other constitutional rights, such as the right to equal protection, exists under Arizona law. Plaintiffs also cite Justice Feldman's concurring opinion in *Jung v. City of Phoenix*, 160 Ariz. 38, 42, 770 P.2d 342, 346 (1989), as suggesting that damage claims may be brought in this context. We also find that case distinguishable, for the simple reason that the plaintiffs in *Jung* invoked their federal constitutional rights and sought damages under 42 U.S.C. § 1983.

¶ 45 The Arizona Legislature has never enacted a counterpart to § 1983, and no published Arizona decision has created a damage remedy for general violations of state constitutional rights. Other state courts have split on the question whether a damage remedy exists to redress state constitutional violations. Some state courts have held that no damage remedy is available. *See, e.g., Kelley Prop. Dev., Inc. v. Lebanon*, 226 Conn. 314, 627 A.2d 909 (1993); *Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434 (Tenn.Ct.App.1999); *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex.1995).

¶ 46 But a number of state courts have extended the reasoning of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which the Supreme Court recognized an implicit cause of action for violations of the federal constitution by federal officials, to hold that damages are available in certain classes of cases involving state constitutional violations. *See, e.g., Gay Law Students Ass'n v. Pacific Tel. & Tel. Co.*, 24 Cal.3d 458, 156 Cal.Rptr. 14, 595 P.2d 592 (1979) (recognizing cause of action for damages based on state equal protection clause); *Newell v. City of Elgin*, 34 Ill. App.3d 719, 340 N.E.2d 344 (1976) (recognizing cause of action for damages against police officers for violation of state constitutional rights); *Widgeon v. E. Shore Hosp. Ctr.*, 300 Md. 520, 479 A.2d 921 (1984) (finding a cause of action for damages for deprivation of liberty or property interests); *Dorwart v. Caraway*, 312 Mont. 1, 58 P.3d 128 (2002) (damage remedy available for violations of state constitutional right to privacy, due process and prohibition of illegal searches); *Lloyd v. Borough of Stone Harbor*, 179 N.J.Super. 496, 432 A.2d 572 (1981) (affirming damages award under New Jersey Tort Claims Act for violations of state constitutional rights); *Hunter v. Port Auth.*, 277 Pa.Super. 4, 419 A.2d 631 (1980) (finding cause of action under state constitution for denial of public employment).

---

8. "We may review issues not raised in the trial court when 'the record contains facts determinative of an issue which will resolve the action, ... the matter involved is one which affects the general public interest, or where a legal principle, although not suggested by either party, should be adopted on appeal to expedite the enforcement of a right, or redress a wrong.' " *City of Tempe v. Fleming*, 168 Ariz. 454, 456, 815 P.2d 1, 3 (App. 1991) (quoting *Stokes v. Stokes*, 143 Ariz. 590, 592, 694 P.2d 1204, 1206 (App.1984)).

¶ 47 We are confronted with an action that, if successful, will present this issue squarely as a matter of first impression. Yet the record is essentially devoid of briefing or argument on the question. We therefore note simply that the Arizona courts have never created a damage remedy for violations of the state constitution, and we decline to do so here.

*CONCLUSION*

¶ 48 For the foregoing reasons, we affirm the superior court's rejection of Plaintiffs'

facial challenge and remand for further proceedings concerning their "as applied" challenge.

CONCURRING: JOHN C. GEMMILL and DIANE M. JOHNSEN, Judges.